782 F.2d 513
 STRACHAN SHIPPING COMPANY and Texas Employers' Insurance
Association, Petitioners,
v.
Earl F. NASH and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 83-4332.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 12, 1986.
 
 Steven L. Roberts, Roger Townsend, Houston, Tex., for petitioners.
 T. Timothy Ryan, Sol. of Labor, Joshua T. Gillilam, II, Marianne Demetral Smith, U.S. Dept. of Labor, Washington, D.C., for respondents.
 Stephen M. Vaughan, Houston, Tex., for Earl F. Nash.
 Agnes G. Kurtz, Benefits Review Bd., Washington, D.C., for other interested parties.
 Petition for Review of an Order of the Benefits Review Board.
 Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, TATE, JOHNSON, WILLIAMS, JOLLY, HIGGINBOTHAM, DAVIS, HILL, and JONES, Circuit Judges.*
 JOHNSON, Circuit Judge:
 
 
 1
 Earl F. Nash suffered an injury to his right knee resulting in permanent partial disability while working as a longshoreman for petitioner Strachan Shipping Company (Strachan) in 1978. Pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-950, Nash sought workers' compensation benefits from Strachan and its insurer, Texas Employers' Insurance Association. The Administrative Law Judge (ALJ) found that Nash had suffered (1) a 1969 high school accident which caused a twenty percent permanent partial disability to his right knee; (2) a 1974 longshoring accident while working for Chaparral Stevedoring Company (Chaparral) which was compensable under the LHWCA and for which Nash actually received compensation of ten percent permanent partial disability; and (3) the instant 1978 injury while working for Strachan which resulted in an additional four percent disability to his right knee. The ALJ determined that the LHWCA required compensation of the entire thirty-four percent. On review of the ALJ's decision awarding thirty-four percent permanent partial disability, the Benefits Review Board (BRB) of the Department of Labor agreed with the ALJ that Nash should be compensated for his entire thirty-four percent permanent partial disability to his right leg as a result of the three knee injuries but subtracted the ten percent compensation which Nash had actually received from Chaparral at an earlier date.
 
 
 2
 In subtracting the ten percent compensation which Nash had previously received from Chaparral, the BRB applied its interpretation of the "aggravation rule" and the "credit doctrine." The aggravation rule requires an employer to compensate an employee for the full extent of the employee's disability, including any preexisting disability that the work-related injury worsens. The credit doctrine, created by the BRB for the singular purpose of avoiding double recoveries, provides that an employer is not liable for any portion of an employee's disability for which the employee has actually received compensation under the LHWCA. In keeping with the credit doctrine and its policy of avoiding double recoveries, the BRB subtracted the ten percent compensation that Nash had actually received from Chaparral. Nash v. Strachan Shipping Co., 15 Ben.Rev.Bd.Serv. (MB) 386 (1983).
 
 
 3
 In the instant appeal, Strachan Shipping Company and its insurer, Texas Employers' Insurance Association,[1] petition this Court to go one step further and extend the credit doctrine to shield the employer (Strachan) from liability for any previous disability for which the employee could have, or should have, recovered benefits from a previous employer pursuant to the LHWCA. We affirm the award of the BRB.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 4
 In reviewing Nash's claim for workers' compensation benefits following his injury with Strachan, the ALJ found that Nash suffered three injuries to the right knee which contributed to his current permanent partial disability. We examine these injuries.
 
 
 5
 In 1969, Nash sustained his first injury to his right knee. Nash, a student at Ball High School in Galveston, Texas, fell while working in a shop class. The fall shattered his right patella which was surgically removed. Nash received no compensation for the accident. The ALJ found that this accident produced twenty percent permanent partial disability to Nash's right knee.[2]
 
 
 6
 In 1974, Nash suffered a second injury to his right knee while working for Chaparral on the waterfront in Galveston. The accident occurred when a forklift loaded with cotton struck Nash's legs. The collision tore the medial meniscus in Nash's right knee. The doctor surgically excised the cartilage and later attributed to this second injury an additional ten percent permanent partial disability to the right leg.[3] Following this second injury to his right knee, Nash could, under the aggravation rule, have pursued compensation for both the Chaparral injury (ten percent) and the previously existing high school injury (twenty percent)--a total of thirty percent disability. Nash, who was not represented by counsel during his settlement discussions with Chaparral, testified that those discussions involved only the Chaparral injury. Nash eventually entered into an "Agreement Regarding Facts" with Chaparral's insurance carrier, Texas Employers' Insurance Association.[4] The agreement made no mention of the initial 1969 high school shop accident. The agreement did, however, recite that Nash's work injury with Chaparral caused permanent partial disability "equivalent to 10 percent loss." In April 1976, the Office of Workers' Compensation Programs of the Department of Labor acknowledged receipt of the agreement in a letter that stated: "This is your authority to dispose of this matter on payment of compensation as outlined in the Agreement."
 
 
 7
 On March 16, 1978, Nash suffered a third injury to his right knee while working for Strachan on the Galveston waterfront. While part of a crew handling cotton bales, Nash fell through a gap between the bales and twisted his right knee. His doctor estimated that this third injury aggravated Nash's knee condition by an additional three to four percent. The ALJ found a four percent increase in permanent partial disability. Strachan's general superintendent testified that, prior to Nash's injury, he was aware that Nash had sustained two prior knee injuries and that he had undergone surgery for those injuries.
 
 
 8
 Following this third injury, Nash sought compensation for the entire thirty-four percent disability.[5] The ALJ agreed with Nash and determined that Nash should be awarded compensation for thirty-four percent disability.[6] On review of the ALJ's award, the BRB, applying its interpretation of the credit doctrine, subtracted ten percent for the percentage of compensation Nash had actually received from Chaparral. The BRB left Nash with compensation for twenty-four percent disability, that being the percentage for which Nash had not actually received compensation.
 
 
 9
 On Strachan's petition for review of the BRB determination, a panel of this Court reversed the BRB award and held that Nash could recover only the four percent additional disability he incurred as a result of his third injury suffered while working for Strachan.[7] Strachan Shipping Co. v. Nash, 751 F.2d 1460 (5th Cir.1985). Upon Nash's suggestion for rehearing, this Court ordered the case to be heard en banc. 760 F.2d 569 (5th Cir.1985).
 
 
 10
 II. NASH'S COMPENSATION BENEFITS UNDER THE LHWCA
 
 
 11
 At the outset, it is noted that there is some common ground between the parties. The parties do not dispute the application of the aggravation rule to Nash's knee injury. Thus, the parties agree that, under the aggravation rule, the disability resulting from Nash's first injury in the 1969 high school shop accident was compensable at the time of Nash's agreement with Chaparral relative to the second injury. The parties also agree that Nash's recovery from Chaparral did not attempt to provide Nash any compensation for his original twenty percent disability resulting from the 1969 high school injury.
 
 
 12
 The question before the Court is what effect Nash's intervening injury and agreement with Chaparral has in determining the amount of Nash's compensation benefits following his third injury with Strachan. The BRB, consistent with its interpretation of the aggravation rule and the credit doctrine, held that the subsequent employer (Strachan) should be credited only for the percentage of compensation Nash actually received from the previous employer (Chaparral). Thus, the BRB limited Nash's recovery to twenty-four percent disability. Strachan argues, however, that the credit doctrine should be extended to credit the subsequent employer (Strachan) for any amount that Nash could have, or should have, recovered in his agreement with his prior employer (Chaparral). In other words, since Nash could have or should have recovered for his disability resulting from the high school injury at the time of the Chaparral agreement, Nash is forever precluded from recovery for disability attributable to his initial injury. Through this tortured interpretation of the aggravation rule and the credit doctrine, Strachan seeks to limit Nash's recovery to the four percent disability Nash incurred while working for Strachan. In examining these two contrasting interpretations, we first consider the aggravation rule and the credit doctrine.
 
 
 13
 A. The Aggravation Rule and the Credit Doctrine Under Current Judicial and Administrative Practice
 
 
 14
 As noted earlier, the aggravation rule is a doctrine of general workers' compensation law which provides that, where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable. See generally 1 A. Larson, Law of Workmen's Compensation Sec. 12.20 (1982); 2 id. Sec. 59.10. The aggravation rule is well-grounded in the statutory language of the LHWCA as interpreted by this Court. Section 903 of the Act as codified provides that compensation shall be payable "in respect of disability ... of an employee." Section 902(10) defines disability as "incapacity because of injury." This Court has recognized that "[a]ggravation of a preexisting condition can be an 'injury' under the Act." Bludworth Shipyard, Inc. v. Lira, 700 F.2d 1046, 1049 (5th Cir.1983). Moreover, the aggravation rule derives statutory foundation from the LHWCA's second injury fund provision, 33 U.S.C. Sec. 908(f). This provision preserves the injured employee's right to recover for the resulting condition but limits the possibility of extreme hardship which might otherwise result to the individual employer by shifting a portion of the employee's recovery to the industry-financed second injury fund.
 
 
 15
 Further, the aggravation rule has been consistently applied by this Court in longshoremen cases. See Bludworth Shipyard, 700 F.2d at 1049 (addiction aggravated by drugs to combat back pain for injury incurred during employment); Fulks v. Avondale Shipyards, Inc., 637 F.2d 1008, 1012 (5th Cir.), cert. denied, 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981) (lung infection aggravated by exposure to silica particles caused by sandblasting operations); Equitable Equipment Co. v. Hardy, 558 F.2d 1192, 1195 (5th Cir.1977) (aggravation of preexisting back condition); Cooper Stevedoring of Louisiana v. Washington, 556 F.2d 268, 271 (5th Cir.1977) (aggravation of preexisting back condition). In Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327 (4th Cir.1982), the Fourth Circuit, consistent with this Court's analysis, applied the aggravation rule and allowed an employee to recover for his entire hearing loss, even though the employer established that only 5.95 percent of the loss occurred while working for the employer Newport News. See also Independent Stevedore Co. v. O'Leary, 357 F.2d 812 (9th Cir.1966) (aggravation of preexisting back disability).
 
 
 16
 While the aggravation rule has figured repeatedly in this Court's review of awards under the LHWCA, we have not had such occasion to apply the credit doctrine. Rather, the credit doctrine has been developed in a series of decisions by the Benefits Review Board as a limit on the aggravation rule in order to prevent double recoveries where the worker has been actually compensated for disability to the same member at a previous point in time. See Nash v. Strachan Shipping Co., 15 Ben.Rev.Bd.Serv. (MB) at 391; Bracey v. John T. Clark & Son of Maryland, 12 Ben.Rev.Bd.Serv. (MB) 110, 112 (1980); Lopez v. Atlantic Container Lines, 2 Ben.Rev.Bd.Serv. (MB) 265, 270 (1975) (dictum).[8] The sole purpose of the credit doctrine is to prevent double recoveries. In the instant case, there is no contention by Strachan, nor can there be, that the BRB's award resulted in any double recovery to Nash. In essence, the concern here is whether Nash will be permitted to obtain a complete single recovery for his injuries.
 
 
 17
 B. The Interpretation of the Aggravation Rule and the Credit Doctrine
 
 
 18
 It is important to bear in mind that Nash is an employee seeking workers' compensation benefits under the LHWCA; he is not a plaintiff seeking recovery under a common law tort theory. The LHWCA represents a compromise by which the employee receives a much smaller recovery than he might receive in a tort action. At the same time, this reduced recovery is intended to be immediate, secure, and less expensive for the employee to obtain. See Bludworth Shipyard, 700 F.2d at 1051. This Court has previously noted well established policies and rules of construction to employ in construing this Act of workers' compensation. We will examine these further.
 
 
 19
 This Court has noted repeatedly that the LHWCA is to be liberally construed in favor of injured employees and recovery by longshoremen. See, e.g., Bludworth Shipyard, 700 F.2d at 1051; New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1038 (5th Cir.1981). The aggravation rule, as applied by the BRB together with the credit doctrine, rests on this same "presumption of compensability grounded in the humanitarian nature of the [LHWCA]." Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d at 329. By enabling Nash to obtain complete recovery for his injuries, those injuries for which he has not been compensated previously, the BRB's interpretation of the aggravation rule and the credit doctrine furthers the employee's rehabilitation. See Bludworth Shipyard, 700 F.2d at 1051 (LHWCA intended "to rehabilitate injured workers so that they might become productive members of society"). In attempting to provide a single complete recovery to the employee,[9] the BRB's interpretation of the aggravation rule and the credit doctrine is consistent with the recognized purpose of the LHWCA.
 
 
 20
 In contrast, Strachan's proposed interpretation of the aggravation rule and credit doctrine undermines the policy of providing an injured employee with a single complete recovery for his injuries. Strachan's proposal represents an unprecedented attempt to expand the credit doctrine and therefore restrict the aggravation rule. Under the general principle of the aggravation rule, both Chaparral and Strachan were liable for Nash's preexisting impairment since the overall impairment that resulted from both the Chaparral injury and the Strachan injury included the preexisting impairment resulting from the 1969 high school injury. If this case had presented a situation in which Nash had only suffered the 1969 high school injury (which resulted in twenty percent disability) and the 1978 Strachan injury (resulting in an additional four percent disability), Nash could clearly have recovered compensation from Strachan for the resulting twenty-four percent disability. Strachan's proposed interpretation, however, would deny any recovery for the 1969 high school injury based simply on the fortuitous circumstance that Chaparral escaped liability it should have, or could have, been required to bear.[10]
 
 
 21
 This Court has stated that such limitations on employee recovery are not favored, absent statutory authority. United Brands Co. v. Melson, 594 F.2d 1068, 1075 (5th Cir.1979).[11] Courts have consistently rejected any attempt to construe the LHWCA as requiring an employee to seek the maximum conceivable compensation from an employer or to forfeit thereafter recovery on a portion of his disability. Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327 (4th Cir.1982), for example, involved an employee who had previously been employed as a "burner" in a noisy work environment, and had already sustained a 25.3 percent binaural hearing loss. He was thereafter, in 1971, employed in similar work with Newport News Shipbuilding and Dry Dock Co. (Newport News). In 1979, after seven years on the job, the employee sought recovery for his full 31.25 percent binaural hearing loss. Although Newport News argued that its liability should be limited to the additional hearing loss (5.95%) suffered by the employee while working for Newport News, the Court had no difficulty in affirming the BRB's award of the full 31.25 percent compensation to be paid by Newport News. In doing so, the Court noted that Congress had rejected attempts by employers to limit the aggravation rule:
 
 
 22
 By refusing to include the proposed clause, or any provision which would have suggested an intent to limit an employer's liability under the circumstances presented here, Congress clearly implied that it did not intend to force longshoremen and harbor workers to seek compensation from every employer whose employment may have contributed to a particular disability. We too decline to establish such a rule and, therefore, hold that Newport News must compensate Chester Fishel for the entire 31.25% of his hearing loss.
 
 
 23
 694 F.2d at 330 (emphasis added). The Court thus sustained the BRB's administrative practice that the aggravation rule does not permit reduction of the full compensable disability by inquiry into what the worker should have or could have recovered from a past employer.
 
 
 24
 While the BRB supports the LHWCA policy of promoting full employee recovery, the BRB's interpretation also supports the important policy of avoiding double recoveries. The BRB's interpretation avoids double recoveries by subtracting from an employee's disability the percentage of disability for which the employee has actually received compensation in the past. Thus, in contrast to Strachan's proposal, the BRB's interpretation furthers both the policy of promoting full employee recovery and the policy of avoiding double recoveries.
 
 
 25
 This pattern of providing full employee compensation while crediting an employer for the compensation actually paid from other sources also finds support in a recent amendment to the LHWCA. This statutory amendment makes clear that the credit doctrine should extend only to amounts actually compensated for previous disabilities. As amended and codified, 33 U.S.C. Sec. 903(e) provides:
 
 
 26
 (e) Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or [to the Jones Act] ... shall be credited against any liability imposed by this chapter.
 
 
 27
 Longshore and Harbor Workers' Compensation Act Amendments of 1984, Sec. 3, 98 Stat. at 1641, amending 33 U.S.C. Sec. 903 (emphasis added). Although not literally applicable to the instant case (since the amendment applies to compensation under state compensation systems or the Jones Act), the amendment, like the credit doctrine as applied by the BRB, credits the employer only for amounts actually paid to the employee.[12]
 
 
 28
 The BRB's interpretation of the aggravation rule and the credit doctrine also reflects the balance Congress has drawn between providing the injured worker with complete recovery and encouraging the employment of disabled workers. In drawing this balance, Congress has created a mechanism, the second injury fund, to limit the impact on an employer. Strachan and its insurer take the position that it is "ironic" to invoke the second injury fund in the instant case since it does not apply here.[13] However, Strachan's position ignores the fact that Congress has also balanced the burden on the employer and that on the second injury fund by requiring the employer to share a minimal portion of the employee's compensation. Congress has done this by requiring the employer to pay compensation for the period of weeks provided for the subsequent injury, or for 104 weeks, whichever is greater. 33 U.S.C. Sec. 908(f). Further, the BRB, by creating the credit doctrine, has limited the possible deterrent effect of the aggravation rule in hiring handicapped employees by crediting the employer for previous LHWCA compensation that the employee has actually received. Thus, in balancing the need to provide a complete recovery and the need to encourage the employment of disabled workers, Congress and the BRB have created safety mechanisms within the LHWCA.
 
 
 29
 An important aim of the LHWCA is to provide workers' compensation benefits which are easily, quickly, and routinely established. See Voisin v. O.D.E.C.O. Drilling Co., 744 F.2d 1174, 1176 (5th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985). Strachan's proposed interpretation of the aggravation rule and the credit doctrine cuts against this goal of the LHWCA in two ways. First, Strachan's proposed interpretation deters parties from settling claims under the LHWCA. An employee would neglect at his peril not to convert every possible claim under the LHWCA into one for the greatest possible recovery.[14] Under Strachan's proposed interpretation, the future effect of any settlement or agreement might well become a major complicating factor. There can be no doubt that such an interpretation would deter workers from entering into settlements.
 
 
 30
 Second, Strachan's interpretation of the aggravation rule and the credit doctrine cuts against the employee's ease of establishing benefits in that it requires the reopening of issues previously thought to be settled. Under the BRB's analysis, the only relevant question is what compensation did the injured worker actually receive for the injury in question. No further examination of the prior award, settlement, or agreement is required. In contrast, Strachan's proposal, by attempting to increase the ambit of the credit doctrine to what could have been or should have been compensated at the time of an earlier injury, requires a determination of what amount of disability existed in the past, prior to the injury with the employer from whom compensation is sought. Dividing a worker's present impairment and asking what part of the impairment was earlier compensable will often be a difficult task requiring litigation of issues previously sought to be settled. The BRB's interpretation precludes such collateral redeterminations of the correctness of past awards.[15] In short, Strachan's proposed interpretation of asking what disability could have been or should have been compensated by an earlier employer, perhaps years after the earlier injury, is totally at odds with the goal of establishing benefits easily, quickly and routinely. The Strachan proposal would make for time-consuming and expensive litigation to the employee and would complicate the administration of LHWCA claims for both administrative tribunals and federal courts.[16]III. CONCLUSION
 
 
 31
 This Court concludes that the BRB properly interpreted the credit doctrine to apply only to compensation actually received by an injured worker. The BRB's interpretation of the aggravation rule and the credit doctrine is consistent with the LHWCA and this Court's interpretation of that Act; it attempts to provide the employee with a single complete recovery; it guards against providing any double recovery; it promotes the policies and rules of construction of the LHWCA. The award of the Benefits Review Board is
 
 
 32
 AFFIRMED.
 
 
 33
 JERRE S. WILLIAMS, Circuit Judge, with whom CLARK, Chief Judge, GEE and EDITH H. JONES, Circuit Judges, join, dissenting:
 
 
 34
 The analytical presentation of the majority opinion is generalized and tends to obscure the narrow and precise issue which we face in this case. First, there is no dispute whatsoever that the second injury fund is not applicable because the disability involved is not at a sufficient level to meet the eligibility requirements of the fund. Second, there is no question but that the aggravation doctrine is a valid one and is now part of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 908(f).
 
 
 35
 Stated accurately, the sole issue in this case is: Can the employer of an employee injured on the job be held responsible for a prior non-work connected disability in spite of the fact that a previous employer did not discharge or discharged inadequately its statutory obligation to compensate for that pre-existing non-work connected disability? The only reasonable answer to this issue must be that the previous employer cannot shift its statutory obligation to pay for the prior disability to the subsequent employer. To do so destroys the sensible pattern of the statute, it destroys the binding effect of approved settlements under the statute, and it places an obligation on an employer who has no such obligation. Hence this dissent.
 
 
 36
 The facts are accurately stated by the opinion for the Court. But to emphasize their significance they are restated here as briefly as possible. Appellee Nash injured his knee in high school and was left with a partial permanent disability of 20%. While working for Chaparral he aggravated the original injury by an additional 10% in a work connected injury. It is at this point that the opinion for the Court does not face up to the issue which is before us. The Court refers euphemistically to amounts that the employee "could have or should have" received from Chaparral. The statutory wording, instead, requires that the compensation paid covers all partial disability to the knee which has occurred up to that time.[1]
 
 
 37
 To encourage employers to hire workers already partially disabled by prior non-compensated injuries, the statute sets a cap of 104 weeks' liability on the employer in a work connected aggravating injury situation. The financial burden above that cap is assumed by the second injury fund in the statute. But since Nash's prior disability and aggravating injury fell short of the protective cap of the second injury fund, Chaparral was liable for the full amount. Unless Chaparral's compensation pays the full amount, the statute has been violated.
 
 
 38
 Nash then had a second work connected injury to his knee while working for Strachan. Strachan became obligated for this additional 4% disability to the knee as an aggravation beyond the aggravation which had to be already paid for under the Compensation Act as a result of the Nash settlement with Chaparral.
 
 
 39
 The claim is made that Chaparral settled only for the aggravation to the knee injury caused by the work connected injury which Nash incurred. There is absolutely no authorization under the statute for any such settlement. The statute encourages approved settlements under Section 915(b), as any such compensation scheme obviously should do. But there is a total lack of authorization for any compensation settlement to ignore the statutory obligation to pay compensation and to reach a settlement which does not discharge that statutory obligation. Yet the opinion for the Court in this case holds that that is exactly what happened.
 
 
 40
 The Court relies heavily upon a quotation from Newport News Shipbuilding and Drydock Co. v. Fishel, 694 F.2d 327, 330 (4th Cir.1982). Taken wholly out of context the quotation could be taken as lending some support to the majority position. What the opinion for the Court omits, however, is the fact that the Newport News case involved a situation where there had been no prior compensated injury. The employee had had a cumulative hearing loss working for several employers but had never claimed compensation. Later the employee showed an additional aggravating hearing loss. He filed a claim, and he was properly awarded compensation for his full loss of hearing up to that time. There obviously is justification for the position that an employee does not have to file a disability claim on a work related injury. The statute does not require such a filing, and with no prior compensation a later employer has notice that it will be liable for the full disability in the event of a work connected aggravation. But if a claim is filed, the statutory requirement obviously becomes applicable and that claim must embrace all compensable disability which the work connected injury has aggravated. The statute has no provision allowing escape from this requirement. A later employer is entitled to rely upon compliance with the statutory requirement that the full disability up to the time of hiring has been compensated.
 
 
 41
 The opinion for the Court avoids not only the statutory approach to the issue but a pragmatic approach to the way the statutory scheme is designed to operate. The opinion rather purports to find pragmatic objection to enforcing the statutory provisions as they are applicable in such cases. The claim is made that to hold as urged in this dissent requires an injured employee to prove the extent of prior disability as well as the current aggravation. This is no great burden, and it was done in the hearing before the administrative law judge in this case. Obviously, once the total prior disability is litigated that decision is final as to future claims. The ALJ held in accordance with this dissent that Strachan was liable for only the 4% aggravation incurred while working for Strachan. His holding was that the second injury fund was responsible for the rest. This practical burden on a claimant, if it is one, is demanded by the statute, and relief should be addressed to the legislative branch of the government rather than the courts.
 
 
 42
 In the statutory scheme, the pragmatic situation is that Chaparral hired Nash knowing that he had a permanent partial disability to one knee and knowing that if that disability was aggravated Chaparral would be responsible for the entire disability up to the point that the second injury fund would take over. Either the full partial disability to the knee was paid for in the Nash-Chaparral settlement or Chaparral violated the statute in escaping its obligation. The opinion for the Court correctly analyses the aggravation requirement of the statute and in doing so clearly reveals the obligation upon Chaparral to compensate for the pre-existing injury. Yet, it carefully avoids saying in so many words that Chaparral was obligated. But, of course, Chaparral was obligated, and the Court's opinion does not deny this.
 
 
 43
 Then, Strachan hired Nash knowing that he had a partial disability to his knee which under the statutory requirements had to have been compensated in full under the aggravation doctrine. The majority opinion totally ignores consideration or even mention of the rights of the subsequent employer, Strachan, in this case. The plain and inescapable fact is that Strachan had every right to conclude that it could be obligated only for an additional aggravation beyond that which had already occurred since all prior disability to the knee was compensated by law through the agreed settlement with Chaparral.
 
 
 44
 In contrast, the majority opinion has the effect of authorizing violation of the statute by Chaparral and then tells us that because Chaparral did violate the statute Strachan is obligated to Nash for Chaparral's obligation. Stated in these clear and precise terms, the result is shocking. In the name of applying the credit doctrine the Court refuses to grant the credit to Strachan of a prior compensated disability that is due to Strachan under the statute.
 
 
 45
 If pragmatic concern is addressed realistically we find that what the majority of the Court is requiring is that a subsequent employer, after a compensation for permanent partial disability, must be warned that the fact of full statutory compensation actually does not mean anything and that the subsequent employer may be held liable to compensate for disabilities which under the statute were required to be compensated for at the earlier time. Yet we are told by the Court that the interpretation urged in this dissent is the "tortured" interpretation! It is difficult to conceive of a more effective discouragement to the hiring of those who already have a permanent partial disability which has been compensated than to say prior settlements or payments are not binding and their adequacy can be reopened in the event of additional injury.
 
 
 46
 Finally, up until this case I had always understood that in law generally settlements of disputed claims settled all the issues between the parties. This is about as fundamental proposition of law as one can find in black letters. Yet we are now told that settlements in compensation cases are not like common law settlements and the settlement that Nash executed with Chaparral did not settle the claims between the parties but only so much of the claim as the Board now in hindsight wants to decide was settled. But this view is not in accordance with law. As is characteristic of workers' compensation statutes generally, 82 Am.Jur.2d, Workmen's Compensation Sec. 460, the LHWCA, 33 U.S.C. Sec. 915(b), provides, "No agreement by an employee to waive his right to compensation under this chapter shall be valid." Then in Sec. 908(i)(1), the statute provides that in the best interests of the injured employee the Deputy Commissioner "may approve agreed settlements of the interested parties, discharging the liability of the employer for such compensation." See also 20 C.F.R. Sec. 702.315 and Barulec v. Skou, 471 F.Supp. 358, 361 (S.D.N.Y.1979), aff'd, 622 F.2d 572 (2d Cir.), cert. denied on this issue, 449 U.S. 818, 101 S.Ct. 69, 66 L.Ed.2d 20 (1980). It follows inexorably that Nash's full claim for the total 30% disability to the knee was settled at that time because of the statutory requirement of Sec. 908(f) providing for compensation for "injuries increasing disability" to cover both the original disability and the aggravation while Nash worked with Chaparral. Finally, such an agreed settlement is binding under the provisions of Sec. 908(i)(3).[2]
 
 
 47
 The opinion of the Court does not cite a single judicial authority which refutes this statutory analysis and a thorough search discloses none. It is unfortunate that under the guise of legal analysis, the Court bows to expediency. Under the holding the law ceases to be a system upon which persons can rely and instead becomes a body of ad hoc rules to take care of situations that somebody wants to take care of. And all this is to the detriment of those who properly claim the protection of the laws. Regrettably, this is what the majority of the Court has done by countenancing a violation by Chaparral of its obligations under the statute and then by seriously compounding the error by making an innocent third party, Strachan, liable for Chaparral's default. I register a firm dissent.
 
 
 
 *
 Judges Randall and Garwood did not participate in the Court's consideration of the instant case
 
 
 [1]
 Strachan and Texas Employers' Insurance Association were jointly represented by the same counsel. This opinion refers to the arguments made by that counsel as "Strachan's arguments."
 
 
 [2]
 This finding was in conformity with a medical report proposed a decade after the shop accident
 
 
 [3]
 A report that another doctor had prepared a few months before the surgery estimated a two percent additional disability. Still another medical estimate prepared in 1979 placed the additional disability at five percent. On determination of Nash's award from Strachan, the ALJ found the ten percent figure to be the most accurate
 
 
 [4]
 Texas Employers' Insurance Association was not only the insurance carrier for Chaparral but also the insurance carrier for Strachan
 
 
 [5]
 The total of the 1969 high school injury at 20%, the 1974 Chaparral accident at 10%, and the 1978 Strachan accident at four percent amounted to an entire permanent partial disability of 34%
 
 
 [6]
 Under 33 U.S.C. Sec. 908(c)(2), an employee is entitled to compensation for 288 weeks at his compensation rate for the loss of use of a leg; Sec. 908(c)(19) of Title 33 allows compensation "for proportionate loss" of a "member." An employee's compensation rate generally is derived by taking two-thirds of the employee's weekly wage at the time of the injury resulting in permanent partial disability. See 33 U.S.C. Sec. 908(c)
 
 
 [7]
 The ALJ had also held that Strachan should pay for only four percent disability, while the LHWCA's second injury fund, see 33 U.S.C. Sec. 908(f), should pay the remaining 30%. On review, the BRB held that the second injury fund owed no part of Nash's compensation. The panel affirmed that portion of the BRB decision
 
 
 [8]
 In its briefs to this Court on panel consideration of this case, the Office of Workers' Compensation Programs of the Department of Labor suggested that the credit doctrine was an extra-statutory limitation on employee recovery under the LHWCA and that the credit doctrine therefore should not be recognized by this Court. In other words, the Office of Workers' Compensation Programs sought to uphold the initial 34% recovery for Nash. However, neither the Office of Workers' Compensation Programs nor Nash filed a petition for review with this Court in order to make the award more favorable to Nash. Further, neither party has pursued the point and the argument of all parties accepts the validity of the credit doctrine
 
 
 [9]
 Strachan argues that the employee is precluded from recovering for his preexisting disability since the Chaparral award "necessarily compensated Claimant [Nash] for his entire compensable injury." Petitioners Brief on Panel Hearing at 14. Strachan asserts that this is so because statutory safeguards under Secs. 8(i) and 15(b) of the Act regarding settlements of LHWCA claims ensure complete employee recovery and the finality of settlements. It cannot be gainsaid, however, that these safeguards failed to assure Nash a complete recovery at the time of his agreement with Chaparral. Strachan does not make evident why these safeguards, which aim at assuring complete recovery, should be used later to deny full compensation when the safeguards failed to provide full recovery after the first compensable injury
 
 
 [10]
 The BRB's result is sought to be construed as inequitable in that it imposes liability on an employer even though the worker did not incur the greater part of his injury with that particular employer. However, even in those cases in which such a result obtains, it is no more inequitable than the aggravation rule itself, which requires an employer to compensate an employee for his entire disability, including that portion of the disability incurred in prior employments and activities. Moreover, Congress and the BRB have created safety mechanisms to minimize the impact of this harshness. See infra at 520
 
 
 [11]
 While the ultimate holding of Melson that an employer should not be credited for benefits that the employee has received under a state compensation system has been modified by a recent amendment to the LHWCA, see Longshore and Harbor Workers' Compensation Act Amendments of 1984, Sec. 3(b), Pub.L. No. 98-426, 98 Stat. 1639, 1641 (1984), the principle of Melson, that this Court will not imply limitations on employee recovery absent statutory authority, remains sound. Indeed, the amendment indicates a statutory pattern that Strachan should receive credit only for the percentage of disability actually compensated by a previous employer. See infra at 520
 
 
 [12]
 The BRB's analysis differs somewhat in that it credits the employer for the percentage previously compensated while the amendments credit the amount previously compensated. The employee Nash, who under the facts of this case would benefit from an "amount based" credit doctrine, has not filed a cross-petition for review of the BRB's award. Thus, we are not called on to examine which one of these constructions of the credit doctrine furthers the aims of the LHWCA. See Bath Iron Works Corp. v. White, 584 F.2d 569, 573 n. 2 (1st Cir.1978)
 
 
 [13]
 Strachan and its insurer contend that, if they are held liable for Nash's entire disability less the 10% previously compensated, the industry-financed second injury fund should bear a portion of the liability for Nash's award. The earlier panel opinion of this Court unanimously rejected this argument. See 751 F.2d at 1464-66. Strachan's renewed urging of this point has called for a reexamination of Strachan's arguments, and results in a redetermination that the portion of the panel opinion discussing the second injury fund is correct
 
 
 [14]
 This litigation-producing consequence becomes more obvious if one posits an example. One may assume two injuries: (1) a non-compensable injury causing 20% disability; and (2) a compensable injury causing four percent disability. Following the second injury, an employee may wish to quickly settle his minor claim for four percent disability, rather than to convert his claim into a major one, in order to avoid expensive and time-consuming litigation. Under Strachan's interpretation, the employee who selects such a course would do so at his peril; the employee must convert his minor claim into a major one in order to avoid the possibility that he will have forfeited a significant part of his compensation if he suffers a later injury
 
 
 [15]
 Moreover, a logical extension of Strachan's proposed interpretation reveals that its version of the aggravation rule and the credit doctrine would not be limited to cases, like Nash's, of three or more successive injuries; rather, it would invite redetermination of what was earlier compensable in every case of at least two successive injuries to the same member during employment covered by the LHWCA. The Strachan proposed interpretation asks what compensation "could have," or "should have," been recovered under the LHWCA from a previous employer and thus logically applies even if a claim was never filed for what the subsequent employer attempts to show was a compensable injury in the past. A colorable contention that the injured worker had a pre-existing condition related to past maritime work would be available in many cases and could complicate the administration and expense of LHWCA claims in numerous cases
 
 
 [16]
 In response to these administrative concerns regarding the settlement and agreement process, Strachan and its insurer respond that its proposed interpretation is necessary to prevent abuse of the settlement process. Strachan argues that, under the BRB's interpretation, employees might purposely settle a claim for a low percentage of disability in the hopes of being injured again in the future and collecting on the previous disability at a higher compensation rate. Strachan presents no support for its assertion that employees have abused the settlement process under existing administrative rule, nor does it appear likely that workers would purposely engage in such sandbagging simply to create higher benefits. Strachan's assertion is a false policy. Moreover, it must be remembered that, at the time Nash reached his agreement with Chaparral, it had not been established that he suffered 20% disability from the first 1969 injury. Nor could it have been known at the time of the Chaparral agreement that Nash would suffer a third injury
 
 
 [1]
 33 U.S.C. Sec. 908(f) provides:
 (f) Injury increasing disability:
 (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.... If following an injury falling within the provisions of subdivision (c)(1)-(20) of this section (which includes permanent partial disability to a knee in (c)(2, 15, 19)), the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater ... (emphasis added).
 
 
 [2]
 33 U.S.C. Sec. 908(i)(3) provides:
 A settlement approved under this section shall discharge the liability of the employer or carrier or both....