**TODD SHIPYARDS CORPORATION and Aetna Casualty and Surety Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR and Vincent P. Clark, Respondents.**

No. 87-7307.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1988.

Decided May 31, 1988.

Daniel F. Valenzuela, Samuelsen, Coalwell & Gonzales, San Pedro, Cal., for petitioners.

Michael S. Hertzig, Dept. of Justice, Washington, D.C., for respondent, Director, Office of Workers' Compensation Programs.

Merle Rabine, Santa Ana, Cal., for respondent Vincent Clark.

Before FARRIS, NORRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Todd Shipyards Corporation (Todd) and Aetna Casualty and Surety Company (Aetna), Todd's carrier, petition for review of the order of the Benefit Review Board (Board) of the Department of Labor affirming in part, vacating in part, and modifying in part the order of the administrative law judge (ALJ) awarding benefits to Vincent P. Clark pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA). We must decide whether Todd is entitled to subtract from Clark's scheduled disability percentage the percentage of disability from a previous injury for which Clark receives benefits from the Veterans Administration (VA).

## PROCEDURAL BACKGROUND

Vincent P. Clark suffered an injury to his left leg resulting in permanent partial disability while working for Todd. Pursuant to the LHWCA, 33 U.S.C. §§ 901–950, Clark sought workers' compensation benefits from Todd and Aetna. After an administrative hearing the ALJ found that: (1) Clark had suffered an injury to his left knee in 1964 while playing football in high school; (2) he had injured his left knee again in 1975 when he fell from a toboggan; (3) he was discharged from the Navy because of continuing problems with the left knee and was given a service connected disability of 10%; (4) Clark presently has an 18% left leg impairment, 17% of which is attributable to the left knee and 1% to the left ankle; (5) the 1% impairment to the ankle is due to the Todd injury; and (6) two-thirds of the disability to the knee was preexisting, and one-third is due to the injury in question. The ALJ awarded Clark permanent partial disability from the Todd accident for 66⅔% (⅓ of 17% for the knee, plus 1% for the ankle) of the scheduled benefits under 33 U.S.C. § 908(c)(2) and (19). On review of the ALJ's decision,

the Board disagreed and held Todd liable for the entire 17% knee and 1% ankle disability.

■ In determining that Todd was liable under the LHWCA for the entire 18% disability, the Board applied the "aggravation rule", the interpretation of which is not in dispute here and the "credit doctrine," the interpretation of which constitutes the critical issue in the case. The aggravation rule "requires an employer to compensate an employee for the full extent of the employee's disability, including any preexisting disability that the work-related injury worsens." *Strachan Shipping Co. v. Nash*, 782 F.2d 513, 515 (5th Cir.1986) (en banc). Thus, it was indisputably proper for the Board initially to establish the disability at 18%. The question is whether the Board should then have deducted the 10⅓% disability for which petitioner was already receiving compensation. The credit doctrine permits the deduction of certain types of payments for prior injuries and thus, in some circumstances, avoids double recoveries. Prior to the recent codification of the credit doctrine an employer was not liable "for any portion of an employee's disability for which the employee has actually received *compensation under the LHWCA.*" (emphasis added). *Id.*[1] Applying that interpretation, the Board held that the "credit doctrine" was not applicable because Clark was receiving veterans' disability benefits for his prior injury and not *compensation under the LHWCA.*

### The Credit Doctrine and Veterans' Administration Disability Benefits

In the instant appeal, Todd and Aetna petition this court to reverse the decision of the Board, and apply the credit doctrine to VA disability benefits so as to offset Clark's VA benefits against his award under the LHWCA.[2] We are not free to do

---

1. In 1984, the "credit doctrine" was broadened and codified at 33 U.S.C. § 903(e) in the LHWCA, and states that:

 Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter *pursuant to any*

*other workers' compensation law or section 688 of Title 46* (relating to recovery for injury to or death of seamen) shall be credited against any liability imposed by this chapter. 33 U.S.C. § 903(e) (emphasis added).

2. We review decisions of the Board for "errors of law and for adherence to the statutory stan-

so, although our affirmance of the Board's decision is based on a ground that is somewhat different from that used by the Board.[3]

 Our analysis of 33 U.S.C. § 903(e) and its legislative history, plus our examination of other federal disability laws, convinces us that veterans' disability benefits are not only not claimed or paid pursuant the LHWCA but they are not claimed or paid pursuant to a workers' compensation law, or the Jones Act[4], and thus are not included within the credit doctrine as codified in the LHWCA. Both steps in the analysis are now required. Prior to codification the credit doctrine prevented double recoveries in extremely limited circumstances. It allowed the offset of benefits against LHWCA awards only if the prior benefits were also awarded under the LHWCA. *See Nash,* 782 F.2d at 515. Thus, before codification a claimant could receive double recovery for an aggravated injury if the prior benefits were paid under a state workmens' compensation act, or indeed under any other federal or state statute other than the LHWCA. *See United Brands Co. v. Melson,* 594 F.2d 1068, 1075 (5th Cir.1979). In 1984 Congress broadened and codified the credit doctrine. 33 U.S.C. § 903, as amended by Act of Sept. 28, 1984, Pub.L. No. 98–426, 98 Stat. 1640; *see also* H.R. 2488, 98th Cong., 2d Sess. (1984). It now allows the crediting against an LHWCA award of any other workers' compensation benefits or Jones Act benefits, received for a prior injury, as well as any LHWCA benefits awarded for that prior injury. 33 U.S.C. § 903(e).

While we agree with the Board that the credit doctrine does not apply to Clark's veterans' disability benefits, we must go beyond the reasoning set forth in the Board's opinion in order to reach that result. The Board concluded that the credit doctrine did not apply because Clark's prior injury was not compensated under the LHWCA. That holding is consistent with the earlier version of the credit doctrine but does not resolve the additional questions which must be answered under the version recently codified in the statute.

Because the injury occurred in 1980 and the ALJ's decision was issued on November 28, 1983, it is conceivable that the Board was applying the credit doctrine as it existed prior to its codification by Congress in 1984. In fact, the Board's opinion of July 23, 1987, nowhere cites or mentions the statutory codification. However, the brief of the Director, Office of Workers' Compensation Programs, filed in support of the Board's decision does not base its analysis on the earlier version of the credit doctrine; nor does it attempt to justify the Board's rationale; instead it argues that any error in the Board's reasoning is harmless and does not alter the result. We agree with the Director, and hold that VA disability benefits are not included in "any other workers' compensation law" (or section 688 of Title 46), and for that reason the credit doctrine, as codified, does not apply.[5]

dard governing the Board's review of the administrative law judge's factual determinations." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980) (footnote omitted). Decisions of the Board are not entitled to any special deference. *Todd Shipyards Corporation v. Black,* 717 F.2d 1280, 1284 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). However, we will respect the Board's interpretation of the LHWCA if the interpretation is reasonable and reflects the underlying policy of the statute. *Kelaita v. Director, Office of Workers' Compensation Programs,* 799 F.2d 1308, 1310 (9th Cir.1986).

3. We are not required to affirm for the reasons given by the Board. *See* 33 U.S.C. § 921(c); *United Brands Co. v. Melson,* 594 F.2d 1068, 1072 n. 10 (5th Cir.1979). When the Board's

Order can be affirmed on a question of law, we are fully empowered to do so, even though the Board relied on a different ground or principle. *Id.*

4. 46 U.S.C. § 688, which provides for the recovery of compensation in the case of death or injury to seamen, is commonly referred to as the Jones Act. Benefits received under the Jones Act are the only non-workers' compensation benefits covered by the credit doctrine. *See* note 1, *supra,* for statutory provisions. LHWCA benefits may appropriately be described as workers' compensation benefits.

5. Both parties briefed and argued the case as if the codified version of the doctrine were at issue and not the earlier version relied on by the Board. For that reason alone, we believe it

Our reading of the statute codifying the credit doctrine convinces us that VA disability benefits may not lawfully be offset under that doctrine. VA disability benefits, it would seem apparent, are not paid under a "workers' compensation law". We do not ordinarily refer to members of the armed forces as workers or employees, whether in statutes or in common parlance. Nor do we normally consider laws providing for veterans' benefits to be laws providing for workers' compensation.

The legislative history of 33 U.S.C. § 903(e) supports our conclusion. In explaining what Congress meant by "any other workers' compensation law", the House Committee stated that the offset applies not only in instances in which the employee receives state workers' compensation, but also in those in which he receives benefits under the Federal Employees' Compensation Act (FECA). H.R. 2488, 98th Cong., 2d Sess. (1984). The reference in the legislative history to FECA, the federal workers' compensation statute, and not to other federal disability compensation acts, indicates a congressional intent to limit the credit doctrine to payments received under state and federal workers' compensation laws (as well as Jones Act benefits), and not to include other forms of state or federal benefits.[6] Thus, the legislative history of section 903(e) controverts Todd's contention that Congress intended to expand the scope of the credit doctrine to include VA disability benefits. We also note that the purpose of the Veterans' Act is to prevent veterans from being disadvantaged by their military service, and that the Act is to be liberally construed to their benefit. *Minneapolis Northfield etc. v. United Transp. Union*, 490 F.Supp. 335, 339 (D.Minn.1980); *see also Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct.

2100, 2104, 65 L.Ed.2d 53 (1980) (Acts aimed at benefiting veterans are to be liberally construed for the benefit of those who left private life to serve their country).

The language of other federal disability laws also supports our conclusion that VA disability benefits are not included within the scope of the credit doctrine. For example, the Social Security Act (SSA), the principal federal disability benefits scheme, contains an offset provision applicable to workers' compensation laws, but the offset has not been applied in the case of VA service-connected disability awards. *See* 42 U.S.C. § 424a and its legislative history; 4 A. Larson, *The Law of Workmens' Compensation*, § 97.31 to .33 (1987). Thus, veterans who become disabled because of a service-related injury have a separate and distinct compensation scheme that is not affected by the SSA.

When Congress has chosen to prevent double recovery for veterans it has done so expressly. For example, 10 U.S.C. § 1212(c) requires the VA to deduct military disability severance pay from VA disability benefits to prevent the duplication of payments. *See In re Newman*, 35 B.R. 97 (Bankr.W.D.N.Y.1983). Another example is 38 U.S.C. § 106(a)(1) and (2), which requires individuals falling under that subsection to "elect which benefit [they] will receive", if they are entitled to compensation from both the VA and FECA for the same service.[7] A third example is 38 U.S.C. §§ 3104–3105 which precludes disabled military retirees from receiving VA disability benefits and longevity retired pay at the same time. Military retirees are required to waive retired pay equal in amount to any VA compensation received. Absent such a waiver they cannot receive VA disability benefits. *Absher v. United States*, 805

would be appropriate to decide the petition on the basis of the codified version. Equally important is the fact that Public Law 98–426, Section 28(a) provides that section 903(e) applies to cases pending at the date of its enactment. *See* Historical Note to 33 U.S.C.A. § 901.

6. In addition, of course, the doctrine continues to cover prior payments received under the LHWCA. While the statute may be unclear on this point, the congressional intent is beyond

dispute. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1211–22, 94 L.Ed.2d 434 (1987).

7. Under 38 U.S.C. § 106(a)(1), individuals who were discharged, under certain conditions, for disability from the Women's Army Auxiliary in the early 1940's are considered active duty for purposes of all laws administered by the VA.

F.2d 1025, 1027 (Fed.Cir.1986) (per curiam). There is no provision in any statute that expressly permits the deduction of VA disability benefits from benefits awarded under the LHWCA.

A number of the provisions of the VA statutes and regulations highlight a congressional intent to treat disabled veterans differently from individuals injured in an occupation covered under a traditional workers' compensation law. For example, VA disability benefits for peacetime injuries are lifetime in nature.[8] 38 U.S.C. §§ 314, 331, 334. In addition, increased compensation is provided for dependents of disabled veterans whose disability is rated not less than 30%. 38 U.S.C. § 315. Also, if a veteran receiving disability benefits disappears, compensation is still payable to the veteran's spouse, children and parents. 38 U.S.C. § 358. Thus, Congress' entire approach to veterans' benefits supports our conclusion that it did not intend by its silence to provide for the offsetting of those benefits when it codified the credit doctrine. Clearly, there is nothing in Congress' prior actions that suggests a desire that either Todd or Aetna be the ultimate beneficiary of the veterans' benefits awarded to Clark.

Todd places great reliance on *Strachan Shipping Co. v. Nash,* 782 F.2d 513 (5th Cir.1986) (en banc). In *Nash,* the court held that only compensation actually received under the LHWCA could be deducted from a second award, not compensation for which a longshoreman might have been eligible but was not actually compensated. *Id.* at 522. For purposes of its decision the court was required to consider only a prior LHWCA compensation award. The court acknowledged, however, the recent codification extending the credit doctrine to prior recoveries under other workers' compensation statutes and the Jones Act, noting that the same narrow rule of construction was applicable to such offsets. *Id.* at 520. *Nash* in no way suggests that VA benefits constitute workers' compensation; nor does it support the view urged by petitioners at oral argument, that the credit doctrine may be applied to benefits not covered by the terms of § 903(e).[9]

Given the uniqueness of military service, the establishment by Congress of a separate statutory scheme to cover compensation for disabled veterans, and, most important of all, the plain language of § 903(e) (which extends LHWCA offsets beyond the traditional category of benefits paid under the LHWCA only to benefits paid under *other workers' compensation statutes* and the Jones Act), it is clear that veterans' disability benefits are not included within the scope of the credit doctrine as codified. Accordingly, an injured worker may collect workers' compensation benefits under the LHWCA for the full extent of his injury even though he is also receiving veterans' disability benefits for an earlier injury that contributed to his current condition and forms a part of that condition; no offset or credit is permitted for the veterans' disability benefits.

THE BOARD'S ORDER IS AFFIRMED FOR THE REASONS GIVEN IN THIS OPINION.

---

8. In comparison an employee compensated under the LHWCA for a permanent partial disability would be compensated at 66⅔% of the average weekly wages for a specific number of weeks. 33 U.S.C. § 908(c). For example, a person who loses a hand receives compensation for two-hundred and forty-four weeks. A veteran similarly injured would receive compensation for the remainder of his life. 38 U.S.C. § 314(k).

9. Todd also argues that including VA disability benefits under the credit doctrine will encourage employers to hire disabled workers. This policy concern should be addressed to Congress, which is free to amend the Act if it finds the argument overwhelmingly persuasive.