**ITO CORPORATION, Petitioner.**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR and Paul Aples, Respondents.**

No. 88–4688.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1989.

R.A. Osborn, Jr., Molaisn, Osborn & Starr, Gretna, La., for petitioner.

Lloyd N. Frischhertz, Seelig, Cosse Frischhertz & Poollard, New Orleans, La., for Paul Aples.

Joshua T. Gillelan, III, Cornelius S. Donoghue, Jr., U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for Director, Office of Workers' Comp. Programs, U.S. Dept. of Labor.

Before POLITZ, DAVIS and DUHE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

ITO Corporation ("ITO") appeals the decision of the Benefits Review Board ("the Board") affirming the ALJ's award of disability benefits to claimant Paul Aples ("Aples"). We find no error and affirm.

## I.

Aples, a longshoreman, originally injured his back while working for Ryan–Walsh Stevedoring Company ("Ryan") on March 14, 1980. A July 1980 Myelogram showed a small disc herniation at the L5–S1 level. After six weeks of conservative treatment by Dr. Claude S. Williams, an orthopedic surgeon, Aples was authorized to return to work.

During office visits in December 1980 Aples reported to Dr. Williams that he had some recurrent back pain with heavy lifting, but was able to continue working. For the next ten months Aples worked regularly as a longshoreman and did not receive medical treatment for his back. When his work required heavy lifting, he frequently experienced low-back pain and had to take a few days off to "regroup."

On October 26 and 27, 1981, Aples worked for Atlantic and Gulf Stevedores, now ITO, lifting heavy sacks of sugar. On October 28 he saw Dr. Williams who determined that Aples' condition had substan-

tially worsened since his last examination. On October 30 Aples worked for Interocean Stevedoring Company ("Interocean") unloading coffee. By the end of the day on October 30, 1981, he had severe back pain. Although Aples experienced no specific trauma to his back on any of those three days of work in October 1981, his symptoms never abated as they had after similar exacerbations in the preceding year. He did not return to work again.

In July of 1983, the deputy commissioner approved a settlement pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA")[1] between Aples and Ryan for the March 1980 injury. Aples received a lump sum payment of $20,000.

Surgery in July of 1983 showed herniated discs at the L4–5 and L5–S1 levels in Aples' back.

Aples thereafter sought compensation and medical benefits from ITO and Interocean. After a hearing in February 1987, the ALJ determined that: 1) There was no merit to ITO's late notice defense; 2) Aples' two days of work for ITO worsened his condition, but his final day of work for Interocean did not. As a result, Aples was temporarily totally disabled from October 31, 1981 to January 23, 1984 and permanently totally disabled thereafter; 3) ITO's liability was subject to a weekly credit (to be calculated over claimant's life expectancy) for the $20,000 Ryan–Aples settlement.

ITO appealed to the Board, which affirmed the ALJ's finding on both the late notice defense and ITO's liability for the injury but allowed ITO a lump sum credit for the $20,000 Ryan settlement. In an en banc rehearing the board affirmed the panel's decision on the notice and liability issues. However, the board reversed the earlier panel ruling allowing a credit and denied ITO any credit for the Ryan settlement. We deal below with the issues ITO raises in its appeal.

1. 33 U.S.C. § 908(i)(1).

2. 33 U.S.C. § 912(a).

## II.

### A.

This court's review of the Board's factual determinations is limited to determining whether those findings are supported by substantial evidence on the record as a whole; "this court may not substitute its judgment for that of the [ALJ] nor the ... Board." *Tampa Ship Repair, Etc. v. Director, OWCP*, 535 F.2d 936, 938 (5th Cir. 1976). *See also O'Keeffe v. Smith, Hinchman & Grylls Assoc.*, 380 U.S. 359, 362–63, 85 S.Ct. 1012, 1014–15, 13 L.Ed.2d 895 (1965). In applying the substantial evidence review, we must keep in mind that the ALJ was required to resolve all doubts, factual as well as legal, in favor of the injured worker. *See, e.g., Noble Drilling Co. v. Drake*, 795 F.2d 478, 481, *reh'g denied, en banc*, 798 F.2d 1412 (5th Cir. 1986).

### B.

ITO argues first that Aples was barred from receiving compensation because he did not timely notify ITO of his injury. The LHWCA requires that notice be given to the employer within thirty days of the injury.[2] But failure to provide notice does not bar a claim in certain circumstances enumerated by the statute. One such instance is where the employer was not prejudiced by lack of notice.[3]

The only suggestion of prejudice ITO advances is a general one of "no opportunity to investigate the claim when it was fresh...."[4] Such a conclusory claim of prejudice is not persuasive. The determination by the ALJ and the Board that ITO was not prejudiced is supported by substantial evidence and we cannot disturb it.

### C.

ITO argues next that 1) the ALJ improperly allowed Aples the benefit of a presumption of compensability and 2) the ALJ's finding that Aples' back condition

3. 33 U.S.C. § 912(d).

4. Appellant's brief at 13.

was aggravated by his work for ITO is not supported by the evidence.

ITO's argument that the ALJ and the Board improperly granted Aples the presumption of compensability under 33 U.S.C. § 920 is simply incorrect. The ALJ's opinion makes it clear that his finding that Aples' back condition was aggravated by his work at ITO was not based on the section 920 presumption. Rather, the ALJ found that ITO rebutted the presumption by presenting evidence that claimant's impairment was due solely to the natural progression of the March 1980 injury. The ALJ then disregarded the presumption and proceeded to weigh all the relevant evidence on the cause of Aples' impairment. Based on this consideration of the entire body of evidence, the ALJ concluded that Aples' work for ITO aggravated his preexisting back condition.

Weighing the relevant evidence and assessing witness credibility are classic functions of the fact finder. *See, e.g., Cain v. C.I.R.,* 460 F.2d 1243 (5th Cir.1972). As stated above, we must afford great deference to the findings of the ALJ and affirm them if supported by substantial evidence.

Although Aples had persistent problems with his back during 1980, from September 1980 until October 1981, Aples worked regularly as a longshoreman. On October 29, the day after he stopped working for ITO, he returned to Dr. Williams who observed a significant worsening of Aples' back condition. Furthermore, Dr. Williams thought it unlikely that Aples' condition was worsened by the one day of work for Interocean on October 30, 1981 since the examination on October 28, 1980 revealed a condition similar to the condition found a month later.

Because substantial evidence supports the ALJ's findings the Board correctly upheld his determination that Aples' work for ITO aggravated his back condition.

### D.

■ ITO contends that its payments should be reduced by $20,000, the settlement sum Aples received from Ryan. ITO bases its argument on the statutory credit provision of the LHWCA[5] and on the "credit doctrine" approved in our en banc decision of *Strachan Shipping Co. v. Nash,* 782 F.2d 513 (5th Cir.1986). ITO also argues that the entire settlement effectively paid for disability after the second injury and, therefore, a credit is appropriate.

■ ITO's first argument, predicated on the statutory credit provision, is wholly without merit. Section 903(e) has no application to this case; it only applies when the prior compensation was paid under a state workers' compensation provision or the Jones Act. Ryan's payment to Aples was made pursuant to the LHWCA.

ITO's argument predicated on *Nash v. Strachan Shipping Co.,* is misplaced because *Nash* is clearly distinguishable. In *Nash* the employee suffered successive injuries to his leg, a scheduled member. The first injury was a nonemployment-related injury resulting in a 20 percent permanent partial disability to the employee's leg. The second injury occurred while he was employed by Chaparral Stevedoring Co. and was covered by the LHWCA. This injury resulted in an additional 10 percent disability to the leg. Chaparral paid compensation only for this 10 percent disability to the leg that resulted from the second injury. The employee then received a third injury while employed by Strachan that caused an additional 4 percent permanent partial disability to the same member; this was the injury that resulted in the dispute in *Nash.* At issue was whether Strachan was entitled to a credit for the disability to Nash's leg that he had following the Chaparral injury (30%) or the disability for which Chaparral actually paid compensation (10%). The Board held that Strachan was entitled to a credit only for the 10

---

**5.** 33 U.S.C. § 903(e) provides that "any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other work-
ers' compensation law or section 688 of Title 46 ... shall be credited against any liability imposed by this chapter."

percent disability for which Nash was actually compensated.

In *Nash*, the en banc court considered the extent of the credit due to the second employer when the employee had experienced successive injuries to the same scheduled member and had been compensated for some of those injuries by a previous employer. Here, the second employer, adjudged responsible for total permanent disability, seeks a credit for sums paid by an earlier employer for permanent partial disability due to injury of a non-scheduled member. *Nash* therefore does not control this case.

ITO's final contention on the credit issue is that it is entitled to a credit because Ryan's $20,000 settlement with Aples was to compensate him for disability extending past his October 1981 employment with ITO. ITO argues that unless it receives a credit, Aples will necessarily receive double compensation for the time period for which he received compensation from both ITO and Ryan.

When Ryan settled with Aples, it settled potential exposure to Aples for compensation for three types of disability resulting from the 1980 injury: 1) permanent partial disability, 2) temporary total disability and 3) permanent total disability. However, the ALJ determined that Aples' back condition was aggravated by his ITO work and that he became permanently and totally disabled after October 1981. According to this finding, Aples was not totally and permanently disabled before his employment with ITO. We look to the ALJ's findings to determine the extent of Ryan's liability when it settled with Aples. *See Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1249–50 (5th Cir.1979). According to the ALJ's findings, Aples' permanent total disability is not attributable to the 1980 Ryan injury; therefore, Ryan's entire settlement represents its continuing liability for Aples' permanent partial disability resulting from the 1980 injury.

Under the reasoning of *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 91 (D.C.Cir.), *cert. denied, Earth Satellite Corp. v. Hastings*, 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137, (1980), an employer cast to pay compensation benefits for permanent total disability is allowed no credit for compensation paid by a previous employer for permanent partial disability.

In *Hastings*, the employee suffered a stroke due to job stress. After a period of convalescence he returned to part-time work and his salary was pro-rated for the amount of time actually worked. Because the employee was limited in the amount of work he could do he was permanently partially disabled. The employee was later hospitalized with a pulmonary emboli caused by prolonged periods of sitting at work. The employee then was determined to be permanently totally disabled.

The *Hastings* court allowed concurrent recovery for the permanent partial disability and the permanent total disability payments.

According to *Hastings*, the permanent partial award compensates for a worker's reduced earning capacity caused by the first injury. The permanent total award is then based on the worker's wage at the time of the second injury which reflects the diminished earning capacity. "Because compensation for [the] original loss of earning capacity [is] already addressed in the permanent-partial award, logic and fairness require that the permanent-partial disability award continue concurrently with the permanent-total award." Id. at 91.[6] The same logic that supported concurrent awards in *Hastings* calls for denying a credit in this case.[7]

---

6. The statute providing compensation for non-scheduled injuries provides the basis for the *Hastings* analysis. Under 33 U.S.C. section 908(c)(21) compensation for permanent partial disability resulting from injury to a non-scheduled part of the body is based on the actual decrease in wage-earning capacity. The worker receives a percentage of "the difference between the average weekly wages [at the time of injury]

and the employee's wage-earning capacity thereafter...."

7. A hypothetical case used by the *Hastings* court clarifies the issue. "Consider a worker earning $10,000 per year. An accident permanently reduces his earning capacity to $6,000. He is awarded compensation based on the $4,000 diminution in his earning capacity. A second

Accepting the ALJ's finding that Aples' permanent total disability was attributable to his October 1981 employment with ITO, Ryan compensated Aples for a loss in earning power that resulted from his disability caused by the 1980 Ryan injury. While working for ITO, Aples lost his remaining earning capacity and the award against ITO requires ITO to pay for this residual loss.

The credit doctrine was developed to prevent double recoveries where the worker has been previously compensated for the same disability. *See Nash,* 782 F.2d at 518. We are persuaded that ITO has failed to demonstrate that this award duplicates the recovery Aples made against Ryan. The Board correctly denied ITO's request for a credit.

AFFIRMED.

accident disables him totally. The second compensation award is based on the $6,000 in earning capacity remaining after the first accident." *Hastings,* 628 F.2d at 91.