617 So.2d 229 (1993)
Claude J. AUTIN
v.
Agnes Russo AUTIN.
No. 92-CA-1056.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1993.
Writ Denied June 25, 1993.
*230 Cecil M. Burglass, Jr., Stephen F. Cameron, New Orleans, for defendant/appellant Agnes Russo Autin.
Marion F. Edwards, Gretna, David C. Loeb, Chehardy, Sherman, Ellis & Breslin, Lynne W. Wasserman, Metairie, for plaintiff/appellee Claude J. Autin.
*231 Before KLIEBERT, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Agnes Russo Autin, appeals from a judgment in favor of defendant, Claude J. Autin, her former husband, dismissing her action to set aside the community property settlement on the basis of fraud and duress. For the reasons which follow, we affirm.
The parties were married on December 30, 1975 and physically separated during the spring of 1985. On June 10, 1985, Mr. Autin filed a petition for separation. In May or June of 1985 Mr. Autin and his attorney discussed a community property settlement with Mrs. Autin. Thereafter, she obtained counsel to represent her. The separation action did not proceed further. Rather, on November 19, 1985, Mr. Autin filed for divorce based on adultery. Mrs. Autin spoke with her attorney on that same date and advised her attorney that she wished to discharge her. On November 21, 1985, Mrs. Autin signed a community property agreement at the office of Mr. Autin's attorney. The agreement provided that Mrs. Autin was to receive $1,000,000 in cash and various movables. It further provided that Mr. Autin was to receive the remainder of the community property and designated certain assets as either Mr. Autin's separate property or as property that did not belong to the community.[1] Mrs. Autin was not represented. After signing the agreement, Mrs. Autin changed her mind and refused to accept Mr. Autin's check.
On November 29, 1985 Mrs. Autin was admitted to Tulane Medical Center as a result of a drug overdose. She remained in the hospital for almost a month. During that time, on December 11, 1985, a preliminary default was entered in the divorce action. On December 18, 1985, while still in the hospital, Mrs. Autin executed a power of attorney prepared by her former attorney, naming her first husband, Julian Fernandez, and her two daughters as attorneys-in-fact. An answer and reconventional demand were filed on behalf of Mrs. Autin on December 19, 1985. Mr. Autin visited Mrs. Autin in the hospital several times, bringing the $1,000,000 check with him and attempting, in vain, to get Mrs. Autin to take it. Mrs. Autin was released from the hospital on December 24, 1985.
On January 7, 1986, Mrs. Autin filed a Motion To Withdraw Previously Filed Answer And Reconventional Demand. Thereafter, on the same date the default was confirmed, Mrs. Autin again discharged her attorney. The following day, January 8, 1986, again at Mr. Autin's attorney's office and again without counsel for Mrs. Autin, the parties executed another community property settlement, which is the subject of this appeal. This agreement revoked the former agreement and again provided that Mrs. Autin receive $1,000,000 in cash and certain movables. In addition, she received a home that the parties had owned. The agreement again listed several assets as Mr. Autin's separate property.
On February 18, 1987, Mrs. Autin filed a Petition To Set Aside Community Property Settlement based on fraud, duress, lesion and her own incompetency. Trial on the merits took five days (February 12 and 14, 1992, March 13, 1992, and April 13 and 14, 1992) and the matter was taken under advisement with counsel to submit memoranda. On May 29, 1992 the trial court rendered judgment dismissing Mrs. Autin's petition, *232 finding that she had failed to prove her claims. It is from this judgment that Mrs. Autin now appeals.
On appeal, Mrs. Autin assigns as error only the trial court's finding that there was no fraud or duress. She argues that the settlement agreement was procured through conscious, actionable duress and the deliberate suppression of facts. Mrs. Autin relies on La.C.C. arts. 1397, 1953 and 1959 in support of her argument. More particularly, she contends that her hospitalization, psychosis, vulnerability at the time and lack of legal representation, combined with Mr. Autin's threats, persistence and refusal to furnish a list of assets, all acted together to vitiate her consent to the community property agreement of January 8, 1986.
In 1986, when the community property agreement was entered into, La.C.C. art. 1397, concerning the rescission of partitions, provided:[2]
Partitions made, even with persons of full age, may be rescinded, like other covenants, for radical vices, such as violence, fraud or error.
La.C.C. art. 1953, defining fraud, provides:
Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
La.C.C. art. 1959, concerning the invalidity of consent obtained through duress, provides:
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation.
Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear.
Thus, Mrs. Autin argues that the trial court erred in not finding that the January 8, 1986 community property agreement was obtained through fraud and duress, vitiating her consent to it, and giving her the right to have the agreement set aside.
To support the fraud claims, Mrs. Autin contends that neither Mr. Autin nor his attorney provided her or her attorney with a detailed descriptive list of assets and liabilities before she signed the community property agreement. Mrs. Autin contends that she specifically asked Mr. Autin and his attorney for such a list. There was also testimony that Mrs. Autin's attorney made one request for the descriptive list.
While the trial court did find that Mrs. Autin was not provided such a list, he also found that there was no showing of fraud in this action. Instead, what was provided was a draft of the proposed settlement agreement. Mrs. Autin's attorney relied on this draft to engage in settlement negotiations with Mr. Autin and did not make any further effort to obtain the descriptive list, financial statements or tax returns. The trial court found no proof of any attempt by Mr. Autin or his attorney to prevent Mrs. Autin or her attorney from obtaining a detailed descriptive list. Furthermore, a memo introduced into evidence, drafted by Mrs. Autin's attorney for her file, showed that Mrs. Autin and her attorney had discussed and agreed that they would not make inquiry into Mr. Autin's finances. Also, the trial court noted that the evidence established that in the months during which the settlement agreement was negotiated, there was never any dispute between the parties as to the assets of the community. Further, at trial, no community assets not listed on the proposed settlement were proved to exist.
The two elements essential to establishing legal fraud are an intent to defraud or gain an unfair advantage and a resulting loss or damage. Heyl v. Heyl, 445 So.2d 88 (La.App. 2nd Cir.1984), writs denied, 446 So.2d 1228 (La.1984). However, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. Adams v. Adams, 503 So.2d 1052 (La.App. *233 2nd Cir.1987). A party alleging fraud has the burden of establishing it by a preponderance of the evidence. La.C.C. art. 1957.
Based on our review of the record, we find that Mrs. Autin did not establish, by a preponderance of the evidence, an intent by Mr. Autin to defraud her or her resulting loss. Accordingly, we find no error in the trial court's determination that the facts were inadequate to support a finding of fraud that would have vitiated Mrs. Autin's consent to the community property agreement.
In support of her claim of duress, Mrs. Autin contends that Mr. Autin threatened her, preying on her weakened emotional state, to get her to sign the agreement. She contends that he threatened to reduce his settlement offer by $100,000 each day until she signed it. He visited her in the hospital, after her drug overdose, on several occasions, carrying a check for $1,000,000 and trying to get her to accept it. She also contends that he threatened to publicly disclose facts about her alleged adultery.
Mr. Autin disputes these allegations and specifically denies threatening to reduce his offer if she did not accept his proposal. He testified that he visited Mrs. Autin in the hospital because he was concerned about her well-being and he brought the check only because he was anxious to get the money to her so she could move forward with her life. He also denied threatening to publicly disclose her adultery. He stated, and the record discloses, that he did file a petition for divorce based on Mrs. Autin's adultery. He testified that he found the situation personally embarrassing and would have preferred to keep it quiet.
The court found that Mrs. Autin had not proven her allegations of duress. The court noted that Mrs. Autin offered no corroborating evidence of the alleged threats by Mr. Autin, other than the testimony of her attorney, that Mrs. Autin had told her of the threats. The trial court apparently discounted the testimony of Mrs. Autin's attorney upon finding that the attorney did nothing after allegedly being informed of the threats. The court stated that if her attorney had taken the threats seriously, she would have acted on them in a proper legal manner. Because she did nothing, the court surmised that the attorney had not taken Mrs. Autin's allegations of threats seriously. Furthermore, the court noted that Mrs. Autin did not call as a witness her first husband, Mr. Fernandez, who was caring for her at the time, in order to corroborate her allegations that she was being threatened. Also, neither of Mrs. Autin's doctors testified that she discussed with them any threats made by Mr. Autin. The court found "Mrs. Autin's uncorroborated claims that Mr. Autin made threats against her to be highly suspect."
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear. La.C.C. art. 1959; Adams v. Adams, supra. However, a threat of doing a lawful act or a threat of exercising a right does not constitute duress. La.C.C. art. 1962. Even if adequately proven, such actions would not constitute duress where the threat was of doing a lawful act or exercising a right. In the instant case, Mr. Autin had the right to reduce his settlement offer, if he chose to, and he had the right to make her adultery public in a divorce petition, as he ultimately did.
In considering the nature of the duress, the court must take into account the personal circumstances of the party against whom the duress was applied. Mrs. Autin was depressed over the breakup of her marriage. She was hospitalized for a month following a overdose of medication. However, in the last two weeks of the hospitalization, her doctor testified that she experienced no paranoia or significant depression, nor did she exhibit any signs of psychoses. The doctor testified that he felt that she had the capacity to make major decisions. In fact, on December 18, 1985, while in the hospital, Mrs. Autin executed a power of attorney prepared, at her request, by her attorney. She consistently refused her husband's attempts to give her the $1,000,000 check while in the hospital. *234 Furthermore, Mrs. Autin had the presence of mind to negotiate an addition to her community property settlement, a home that the couple had purchased for $158,000. Thus, even taking into account Mrs. Autin's personal circumstances at the time, in assessing the fear she might have been under, we find that the trial court did not err in failing to find duress sufficient to vitiate her consent to the agreement.
On appeal, it is well settled that the standard for review demands that great deference be given to the trier of fact's findings and that those factual determinations not be disturbed in the absence of manifest error or a determination by the appellate court that they are clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
After reviewing the entire record, we find no manifest error in the trial court's determination that Mrs. Autin did not prove her claims. Accordingly, we affirm the judgment dismissing Mrs. Autin's suit against Mr. Autin, to set aside the January 8, 1986 community property agreement. Costs of appeal are to be shared equally by both parties.
AFFIRMED.
NOTES
[1] There are two major assets listed as not belonging to the community. One is stock in Houston National Gas Corporation, or the proceeds from the sale of that stock, which had a net value in 1985, after deducting the basis, of $18,331,240. This property was listed as Mr. Autin's separate property.

The other asset is stock in Louisiana International Marine, Inc., valued at several million dollars. This asset is listed as belonging to Mr. Autin's son, per a counter letter executed at the time of incorporation, before their marriage. We did not address the matter of the counter letter, considered by the trial judge in his reasons for judgment, since Mrs. Autin neither assigned the matter as error nor briefed the issue.
Matters neither assigned as error nor briefed, or matters assigned as error but not briefed, are deemed abandoned. See: Uniform Rules Courts of Appeal, Rule 2-12.4, 2-12.8; Oubre v. Bank of St. Charles and Trust Co., 499 So.2d 602 (La.App. 5th Cir.1986), writ denied 503 So.2d 20 (La.1987); LeBlanc v. LeBlanc, 600 So.2d 160 (La.App. 3rd Cir.1992).
[2] La.C.C. art. 1397 was repealed in 1991 by Act No. 689. However, La.C.C. art. 1948 similarly provides that "[c]onsent may be vitiated by error, fraud or duress."