**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-4340

_____

JAMES BROWN and JANN BROWN,

                                        Plaintiffs-Appellants,

VERSUS

FOREST OIL CORP., ET AL.,

                                        Defendants,

PRODUCTION OPERATORS, INC.,

                                        Defendant-Appellee.

_____

No. 93-5292

_____

JAMES BROWN, ET AL.,

                                        Plaintiffs,

JAMES BROWN,

                                        Plaintiff-Appellant,

VERSUS

PRODUCTION OPERATORS, INC.,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Western District of Louisiana
_____

(August 10, 1994)

Before ALDISERT[1], REYNALDO G. GARZA and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

_____

[1]  Circuit Judge of the Third Circuit, sitting by designation.

James Brown, an employee of Production Operators, Inc. ("POI"), was injured while working on an offshore platform located on the outer continental shelf off the coast of Louisiana. To recover for their injuries, James Brown and his wife sued numerous defendants, including Forest Oil Corp., an owner and operator of the platform. POI intervened to recover medical and wage benefits that it had paid to or on behalf of James Brown since his injury.

Upon learning POI had failed to secure compensation under the Longshoreman and Harbor Worker's Compensation Act ("LHWCA"), the Browns sued POI for damages under 33 U.S.C. § 905(a). [Hereinafter "the LHWCA case"]. POI asserted a counterclaim against the Browns arising out of James Brown's execution when employed of a contract called the Insurance Waiver Agreement ("the Agreement"). The Agreement, if Brown suffered a compensable injury, provided that POI would pay Brown 100 percent of his salary and reasonable medical benefits in lieu of the compensation benefits applicable in the jurisdiction where he was injured. In exchange for these promises, Brown waived any claims that he may have against POI arising out of his injury.

Before trial, the Browns settled with all defendants except POI for $600,000. Later, the Browns' LHWCA case against POI was tried to a jury, which found both POI and Forest Oil responsible for the Browns' injuries. The district court deducted from the total damages found by the jury the full amount that the Browns had collected from the settlement and the benefits that James Brown had previously received from POI. After the application of these

credits, the district court entered a judgment against the Browns for the balance they owed POI for the benefits it had previously paid.[2]

While the federal suit was pending, James Brown filed suit seeking money damages against POI in Texas state court, alleging that POI had breached the Insurance Waiver Agreement by terminating payment of benefits to Brown after he commenced the LHWCA action against POI in federal court. [Hereinafter "breach of contract case"]. Alternatively, Brown argued that POI fraudulently induced him into signing the Agreement. The breach of contract case was removed to federal court and transferred to the Western District of Louisiana. POI's counterclaim in the LHWCA case was severed and consolidated with the breach of contract case.

POI moved to dismiss, or alternatively, for summary judgment. The district court granted POI's motion for summary judgment and dismissed all Brown's claims in the breach of contract case with prejudice.

---

[2] Specifically, the jury awarded James Brown $584,000 in total damages. The jury awarded Jan Brown $27,500 for loss of consortium damages. The parties had stipulated to the amount of Brown's past medical expenses, equaling $54,867.04. Accordingly, James and Jan Brown's total damages were $666,367.04. The district court then applied a credit of $600,000 for the settlement. On summary judgment, the district court had determined that POI was entitled to an employer's lien for benefits it had paid to Brown prior to the tort suit. Therefore the district court applied a credit for $120,640, the amount Brown had previously received from POI. After application of both credits, no portion of the Browns' damages remained due, and the district court entered a judgment against the Browns in favor of POI in the amount of $54,272.96 to complete reimbursement to POI.

The Browns appeal several aspects of the damage award in the LHWCA case and the grant of summary judgment in favor of POI in the breach of contract case. The appeals have been consolidated before this Court. We vacate and remand in part and affirm in part.

DISCUSSION

I. Breach of Contract Case

A. Standard of Review

We review a summary judgment de novo. Abbott v. Equity Group, Inc., 2 F.3d 613, 618 (5th Cir. 1993), cert. denied, 114 S. Ct. 1219 (1994). Summary judgment may be granted if there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A summary judgment may be affirmed on any proper legal basis, even if not ruled on by the district court. See Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 199 (5th Cir. 1993).

B. Breach of Contract Claim

In this Court the parties proceed assuming that, under the Insurance Waiver Agreement, Brown waived his right to compensation under the LHWCA in lieu of the benefits promised under the contract.[3] Section 915(b) of the LHWCA provides, however, that "[n]o agreement by an employee to waive his right to compensation

_____

[3] We question whether the Insurance Waiver Agreement applies to Brown's injuries as it appears to waive benefits under Texas and Louisiana workers' compensation laws. Because there is some ambiguity in the contract, however, we will assume, as the parties do, that the contract applies to compensation benefits under the LHWCA. See Lumar Marine v. Insurance Co. of N. Am., 910 F.2d 1267, 1273 (5th Cir. 1990) (ambiguous contractual provisions are construed against the drafter).

4

under this chapter shall be valid."  Thus, as a matter of law, Brown's breach of contract claim must fail because the contract is void.  See Lawson v. Standard Dredging Co., 134 F.2d 771 (5th Cir. 1943) (finding employment contract that waived benefits under the LHWCA in favor of state worker's compensation benefits invalid).

Contrary to Brown's assertion, we find no policy considerations that preclude this result.  Brown makes much of POI's failure to secure compensation.  What Brown fails to understand is that whether the contract is valid or applies to the LHWCA is a separate inquiry from whether POI failed to secure compensation.  The LHWCA provides mechanisms to "punish" those employers who fail to secure compensation.  See 33 U.S.C. §§ 905(a), 938(a).  The requirements for securing compensation are set forth in § 932 of the LHWCA, and § 932 does not require a contract between the employee and employer.  That POI failed to secure compensation is irrelevant to the inquiry of whether the contract is valid.

C.  Fraud and Misrepresentation Claim

Alternatively, Brown argues that POI through certain representations induced him into entering an agreement that was void.  To prevail on his fraud claim, Brown must prove POI's intent to defraud him or gain an unfair advantage, and a resulting loss, or damages.  Autin v. Autin, 617 So. 2d 229 (La. Ct. App. 5th Cir.), writ denied, 620 So. 2d 846 (1993).  To recover for negligent misrepresentation, Brown must establish the following elements:  1) a legal duty on the part of POI to supply correct

5

information to Brown, 2) a breach of that duty, and 3) damages to Brown as a result of his justifiable reliance upon the misrepresentation. Busby v. Parish Nat'l Bank, 464 So. 2d 374, 377 (La. Ct. App. 1st Cir.), writ denied, 467 So. 2d 1132 (1985).

First, the undisputed facts show that at the time Brown signed the Agreement, POI was not aware that Brown would be working in a federal jurisdiction for workers' compensation purposes. Therefore POI could not have known, at the time it entered into the Agreement, that it would be invalid under the LHWCA. Brown has adduced no summary judgment evidence that demonstrates otherwise.[4]

The only other misrepresentation suggested by the summary judgment evidence is that POI fraudulently induced Brown into signing the Insurance Waiver Agreement by representing that it was a qualified self-insurer under the LHWCA. Brown contends that his damages are the difference between the remedies afforded by the Agreement and those of the LHWCA. Assuming that POI misrepresented its self-insurer status,[5] as previously discussed, POI's self-

---

[4]  In the district court, POI had argued that Brown's allegations did not comply with the specificity requirement of Federal Civil Procedure Rule 9(b). Brown argues that the district court should have treated POI's motion as one for a more definite statement and granted Brown leave to amend his complaint. Both parties, however, submitted evidence beyond the pleadings. Brown can claim no surprise in the district court's treating the motion as one for summary judgment. See, e.g, Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am., 768 F. Supp. 1174, 1179 & n.3 (E.D. La. 1991).

[5]  Brown stated in an affidavit that POI told him that it was a qualified self-insurer when he signed the Agreement. Notably, Brown does not testify that POI told him that it was a qualified self-insurer under the LHWCA. As stated above, POI did not know that the LHWCA would apply to Brown, and POI was qualified under state workers' compensation laws.

6

insurer status is irrelevant to the contract's validity. Brown has failed to show how such a misrepresentation caused him any damages.

Because we find that Brown has failed to establish a genuine issue of material fact as to his fraud and misrepresentation claim, we need not address the prescription argument urged by POI.

II. The LHWCA Case

A. Credit for Settlement

The Browns argue that the district court erred in setting off the entire $600,000 they received in settlement against the total damages awarded to them at trial.[6] They argue that Louisiana law, made applicable by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331-1356, is the applicable law. Accordingly, the Browns contend that the district court should have employed the proportionate fault method in offsetting the third-party settlement. See Diggs v. Hood, 772 F.2d 190, 195-96 (5th Cir. 1985) (explaining that under Louisiana law, nonsettling tortfeasor is responsible for only his share of the judgment based on his percentage of fault). POI responds that under the OCSLA, Louisiana law only applies if there is no inconsistent federal law, and because the LHWCA embodies a one recovery policy, the dollar-for-dollar or pro tanto approach to credit was appropriate.

---

[6] POI challenges the Browns' standing to raise this claim. POI's argument that the Browns were not injured because they obtained the single recovery they are entitled to begs the question raised by this claim. Nor is the claim moot as POI argues. The issue raised in this case does not concern contribution among tortfeasors, and that POI and Forest Oil have resolved the issue of contribution between them is irrelevant.

7

A brief review of the statutory framework governing this action is necessary to understand the issue confronting this Court.

Because Brown was injured on a platform on the outer continental shelf, the OCSLA applies to this lawsuit. 43 U.S.C. § 1333(a). Pursuant to § 1333(b) of the OCSLA, compensation is payable under the provisions of the LHWCA for employees injured as a result of operations conducted on the outer continental shelf for the purpose of exploring for or removing natural resources from the seabed. Because POI was engaged in this type of operation, the LHWCA is the applicable compensation scheme in this case.

Under the LHWCA, an injured worker is ordinarily barred from bringing a civil action against his or her employer. See 33 U.S.C. § 905(a). When an employer fails to secure compensation in accordance with § 932 of the LHWCA,[7] however, § 905(a) provides that an employee or his legal representatives "may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death." Because POI failed to secure compensation, the Browns elected to bring a civil action under § 905(a).

---

[7] Section 932 provides that every employee shall secure the payment of compensation:

> (1) By insuring and keeping insured the payment of such compensation with any stock company or mutual company or association, or with any other person or fund, while such person or fund is authorized (A) under the laws of the United States or any State, to insure workmen's compensation, and (B) by the Secretary, to insure payment of compensation under this chapter; or
>
> (2) By furnishing satisfactory proof to the Secretary of his financial ability to pay such compensation and receiving an authorization from the Secretary to pay such compensation directly.

8

The Browns brought their civil cause of action under the OCSLA. Section 1333(a)(2)(A) of the OCSLA states that:

> To the extent that they are applicable and not inconsistent with this Subchapter or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon . . . .

Thus, Louisiana civil law is adopted as surrogate federal law in this lawsuit via the OCSLA.

Thus, the issue posited by this case is not whether the LHWCA supplants Louisiana law under the OCSLA; we have already determined that it does. The Browns are able to bring this civil action only because the LHWCA permits them to under the circumstances. The issue presented today is whether the LHWCA mandates the application of the pro tanto rule when an employee elects to bring a civil action under § 905(a). The resolution of that issue is a matter of statutory construction.

POI relies on Hernandez v. M/V Rajaan, 841 F.2d 582 (5th Cir.), modified, 848 F.2d 498 (5th Cir.), cert. denied, 488 U.S. 981 (1988), and cert. denied, 488 U.S. 1030 (1989), and Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256 (1979), to support its position that the LHWCA, although allowing an employee to file a civil action, alters the state law rule applicable to the issue of a nonsettling defendant's liability. In Hernandez, an injured longshoreman brought an action against a vessel under the general

9

principles of maritime law pursuant to § 905(b) of the LHWCA.[8]  The vessel impleaded several third-party defendants.  The plaintiff settled with the third-party defendants before trial.  In determining the liability of the nonsettling defendant, we adopted the maritime pro tanto approach.  We further reasoned that under the LHWCA, the plaintiff was entitled to one recovery for the injuries he suffered.  We explained that because the damage award represented 100 percent of the loss suffered, it must be reduced by the amount the plaintiff received in settlement from the third-party defendants.

Although this panel has no authority to overrule a prior panel's decision, we question the continuing viability of the Hernandez decision in light of the recent Supreme Court case, McDermott, Inc. v. AmClyde, 114 S. Ct. 1461 (1994).  In McDermott, the Supreme Court rejected the application of the dollar-for-dollar credit method in maritime cases in favor of the proportionate share method.

We further question the broad language in Hernandez concerning the LHWCA's policy of one recovery.  Although admittedly the LHWCA

---

[8]  Section 905(b) provides:
> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

has a general policy to avoid double recoveries,[9] we have also noted that limitations on employee recovery are not favored absent statutory authority. See Strachan Shipping Co. v. Nash, 782 F.2d 513, 519 (5th Cir. 1986) (en banc); United Brands Co. v. Melson, 594 F.2d 1068, 1075 (5th Cir. 1979) (employer should not be credited for benefits that the employee has received under a state compensation system absent statutory authority, even though it results in double recovery), overruled by 33 U.S.C. § 903(e); see also Todd Shipyards Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor, 848 F.2d 125, 129 (9th Cir. 1988) (employer receives no credit for employee's Veterans benefits absent statutory authority). Nothing in § 905(b) suggests that a pro tanto rule be applied. Thus, although Hernandez is analogous, it is not controlling, and we decline to follow its reasoning.

We likewise reject POI's reliance on Edmonds. As the Supreme Court noted in McDermott, Edmonds did not address a nonsettling defendant's liability; it merely reaffirmed the well-established principle of joint and several liability. McDermott, 114 S. Ct. at 1471. In Edmonds, a longshoreman brought suit against a vessel under 33 U.S.C. § 905(b). The longshoreman had received LHWCA benefits from his employer. The question before the Court was

---

[9] That policy has been codified in the statutory credit provision, § 903(e), and the subrogation provisions of § 933. Section 903(e) allows a credit to the employer for any amount that the employee has actually received under state worker's compensation laws or the Jones Act. Section 933 involves the reimbursement rights of the employer when an employee seeks recovery from a third party. Neither of these sections apply to the present case.

11

whether the vessel should pay its proportionate share of the damages or be fully responsible to the longshoreman even if the employer's negligence contributed to the injuries. The Court held that the vessel should be liable to the longshoreman for the full amount of damages. The Court explained that applying a proportionate share rule would place the burden of recovering damages on the injured employee and could potentially result in the employee's recovery of an amount less than actual injury. The Court's concern in Edmonds was not double recovery, but the inequities faced by the employee as a result of the statutory scheme. The same concerns do not exist here, however, as the Browns voluntarily assumed the risk of a "good" or "bad" settlement.

If anything, Edmonds supports the Browns' position. In Edmonds, the Supreme Court declined to alter the pre-existing maritime rule without an indication in the statute or legislative history of congressional intent to do so.

Turning to § 905(a), itself, the purpose of that section is to induce employers to accept and participate in the LHWCA compensation scheme by eliminating the non-participating employer's immunity from tort actions under the LHWCA. See Weeks v. Alonzo Cothron, Inc., 493 F.2d 538 (5th Cir. 1974) (citing Gould v. Bird & Sons, Inc., 485 P.2d 458 (Wash. Ct. App.), review denied, 79 Wash. 2d 1009 (1971)). In essence, § 905(a) restores the employee's pre-LHWCA right against the non-participating employer. Cf. Parker v. South Louisiana Contractors, Inc., 537 F.2d 113 (5th

12

Cir. 1976) (holding that § 905(b) does not create a broader cause of action in admiralty; rather, it preserves a longshoreman's right under prior law), cert. denied, 430 U.S. 906 (1977).

Although there is no helpful legislative history, the language of the statute demonstrates Congress' ability to expressly modify the usual state law rules when it desires to do so. Section 905(a) prohibits an employer from pleading contributory negligence, negligence of a fellow servant or assumption of the risk as defenses, although ordinarily available in most state tort actions. The statute indicates no other change of state tort actions. Cf. Edmonds, 443 U.S. at 266-67 ("[R]eticence while contemplating an important and controversial change in existing law is unlikely.").

Although we are mindful that in this case the Browns may receive a windfall, we will not alter the cause of action that Congress has returned to the employee under § 905(a) without a clearer mandate. Accordingly, we vacate the judgment insofar as it decreed that the $600,000 settlement be deducted from the Browns' total damages and remand for a determination of POI's share of the jury award.

B. Employer's Lien

Prior to commencement of the Browns' civil action, POI paid $120,640.00 to James Brown in compensation and medical benefits. On summary judgment, the district court concluded that POI could recover this amount out of the settlement paid by third-party defendants. The Browns argue that POI made the payments pursuant to the Insurance Waiver Agreement, not the LHWCA; therefore, POI

13

cannot rely on the reimbursement policy of the LHWCA.  The Agreement has no provision for an employer's lien.  We review the district court's grant of summary judgment de novo.  See Abbott, 2 F.3d at 618.

We believe that in the interest of fairness and justice, the payments made by POI under the void Insurance Waiver Agreement should as a matter of law be considered payments in compliance with the LHWCA.  See Lawson, 134 F.2d at 772 (payments made under an invalid contract are considered advance payments of compensation under the LHWCA).  It is undisputed that POI attempted to comply with the LHWCA by filing the necessary forms with the Department of Labor once it began payment, and that the Department of Labor considered POI's payments in compliance with the LHWCA.  The courts have long recognized the employer's subrogation right to be reimbursed from the worker's net recovery from a third party for the full amount of compensation benefits already paid.  Peters v. North River Ins. Co., 764 F.2d 306, 312 (5th Cir. 1985).  This right extends to those employers who voluntarily pay compensation without an award.  See Allen v. Texaco, Inc., 510 F.2d 977, 980 (5th Cir. 1975).

To disallow POI the right of reimbursement would be in contravention of the LHWCA's policy of encouraging voluntary compliance with the LHWCA.  That POI failed to secure compensation does not affect POI's rights; no provision in the LHWCA penalizes the employer for failing to secure compensation by making it

14

forfeit the amounts it paid prior to the commencement of the civil suit.  We conclude that POI is entitled to an employer's lien.

C.    Application of Lien to Jann Brown's Damages

The Browns argue that if we determine that POI is entitled to an employer's lien, then the district court erred in applying that lien against the damages recovered by Jan Brown.  We agree. Employer's offset rights are limited to the portion of recovery intended for the employee.  See 33 U.S.C. § 933(f); Allen, 510 F.2d at 980.  On remand, the district court should apply the employer's lien only to the damages recovered by James Brown.

CONCLUSION

For the foregoing reasons, we VACATE the judgment in part as discussed above and REMAND to determine the appropriate credits to be deducted from the Browns' total damage award.  The grant of summary judgment in both cases is AFFIRMED.