B & P RESTAURANT GROUP, LLC, ET AL

VERSUS

DELTA ADMINISTRATIVE SERVICES, LLC, ET AL

NO. 18-CA-442

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 767-037, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

September 04, 2019

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Stephen J. Windhorst

**REVERSED AND REMANDED**
 SJW
 JGG

**CONCURS WITH REASONS**
 FHW

COUNSEL FOR PLAINTIFF/APPELLANT,
B & P RESTAURANT GROUP, LLC, ET AL
Richard B. Ehret
Ross A. Ledet

COUNSEL FOR DEFENDANT/APPELLEE,
DAVID LAWRENCE
Norman A. Mott, III
Michael S. Blackwell

**WINDHORST, J.**

Appellants/plaintiffs, B & P Restaurant Group, LLC, d/b/a the Rum House of New Orleans, LLC, Highlights Catering & Gourmet Shop, LLC, Island Time Management, LLC, The Rum House of Baton Rouge, LLC, and the Red Dog Diner, LLC ("appellants") appeal the district court's granting of the motion for summary judgment filed by David Lawrence, appellee/defendant ("appellee" or "Lawrence") and the dismissal with prejudice of all appellants' claims against him. For the following reasons, we reverse the district court's judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Appellee, Lawrence, is the sole owner and manager of Delta Administrative Services, LLC ("DAS"), which provides administrative services, including payroll, tax administration, workers' compensation administration, risk management and human resource issues. Appellants each entered into a contract for services with DAS entitled "Service Agreement," which Lawrence signed on behalf of DAS. Pursuant to this agreement, DAS was responsible for withholding and remittances of pay-roll related taxes, including those taxes under FICA, FUTA, and SUTA.[1]

Under Administrative Fees, each service agreement states the "CLIENT agrees to pay a fee to DAS for services" and that "[t]hese fees will be charged on each payroll, as applicable." The fee schedule attached to the service agreement reflects that the administrative fee (also referred to herein as the "service fee") is 1.50% of gross payroll. The fee schedule also states the following:

> This rate is on gross payroll only. These rates include the additional charges for FICA, FUTA, SUTA, and Workers Compensation. The only additional charges will be any company paid benefits you choose to offer your employees. There is no reduction upon reaching the cut-offs for FUTA and SUTA.

---

[1] FICA stands for Federal Insurance Contributions Act. FUTA stands for Federal Unemployment Tax Act. SUTA stands for State Unemployment Tax Act.

On December 1, 2016, appellants filed a petition for damages against DAS and Lawrence, asserting claims based on breach of contract, intentional misrepresentation, and violation of the Professional Employer Organizations (PEO) statute, La. R.S. 23:1761 *et seq.* The only claim asserted against Lawrence individually is the intentional misrepresentation claim. Appellants allege that after maximum SUTA and FUTA tax thresholds had been met, DAS continued to charge appellants for SUTA and FUTA taxes as if they were still owed, and did not pay this collected money to the appropriate taxing authorities but instead wrongfully retained the overcharged amounts for itself.

Under the intentional misrepresentation claim, appellants allege that DAS and Lawrence misrepresented or suppressed material facts to obtain an unjust advantage over appellants by failing to advise them or state in the service agreements that DAS would continue charging appellants FUTA and SUTA taxes after the maximum thresholds were met and would keep those funds as additional, hidden fees. Appellants assert that if they had known DAS and Lawrence would continue charging FUTA and SUTA after the maximum thresholds were met and would retain those amounts as additional, hidden fees, Plaintiffs would never have agreed to do business with them.

On November 7, 2017, appellants filed a first supplemental petition for damages, asserting a claim against DAS and Lawrence individually alleging overcharges involving workers' compensation premiums. The supplemental petition was filed after the May 31, 2017 motion for summary judgment at issue here. On May 31, 2017, Lawrence filed a motion for summary judgment, seeking dismissal of appellants' claims against him personally based on La. R.S. 12:1320, arguing that the statute frees him from individual liability for the debts, obligations or liability of DAS, as the owner and sole member of DAS. Lawrence asserted that he is not liable for DAS's alleged breach of the agreement because he is not a party

to the agreement; he is not liable for the alleged intentional misrepresentation because he is shielded from liability under La. R.S. 12:1320 and appellants cannot prove fraud; and he is not liable for alleged breaches under La. R.S. 23:1763 because this statute creates a duty for the employer (DAS), not its member. After Lawrence filed his motion for summary judgment, the parties participated in written discovery and depositions were taken. Lawrence filed a second summary judgment motion with DAS on March 20, 2018.[1] In this second summary judgment motion, DAS and Lawrence sought dismissal of all of appellants' claims.

In their opposition to the motion for summary judgment, appellants attached excerpts of depositions from multiple individuals who were involved with hiring DAS to provide payroll services and/or worked with Lawrence relative to the services DAS provided appellants, DAS invoices, DAS detailed cost reports, correspondence with Lawrence and the fee schedule. In the depositions, the appellant representatives asserted that they had conversations with Lawrence regarding the DAS rates and he never disclosed that the FUTA and SUTA taxes continued after thresholds were met, or that these amounts were converted to administrative fees for DAS. The appellant representatives also testified that Lawrence did not disclose to them during negotiations or contract discussions that any part of the FUTA or SUTA taxes were actually service fees.

An appellant representative of Island Time Management, LLC stated in her deposition that, in January 2014, Island Time informed DAS that it needed taxes broken out from administrative fees on its invoices.[2] Thereafter, Island Time believed that the invoices separated the two from each other but later learned that they were not.

---

[1] The pleadings related to the second motion for summary judgment are not part of the designated appeal record.

[2] Although Island Time is only one of the appellant entities involved in this matter, it is referred to specifically herein because the opposition to the summary judgment motion contained evidence specifically referencing this appellant.

In opposition, appellants also asserted that each invoice constituted a misrepresentation because even when the FUTA and SUTA taxes were converted to administrative fees, on the invoices, the amount was still represented as FUTA and SUTA taxes. Specifically, on the invoices, the administrative fee is separated out from the other payments, such as gross payroll, hourly employee, salary employee and workers' compensation. The invoices do not state that excess FUTA and SUTA taxes convert to an administrative fee after cutoffs are satisfied.

Another exhibit to appellants' opposition is an email dated January 29, 2015, in which Lawrence as president of DAS informed one of the appellants, Island Time, that DAS would reduce Island Time's rate to 1.0% as of February 1, 2015. A series of emails dated August 19, 2016 through August 22, 2016 indicates that Island Time had recently learned that DAS continued to charge FUTA and SUTA taxes beyond the cutoff and that DAS retained these amounts as part of its administrative fee. The emails also show that Island Time was having difficulties reconciling the amounts paid to DAS with the amounts Island Time had calculated as owing DAS for its services. Island Time requested clarification on multiple occasions before learning the truth.

Appellants further rely on Lawrence's deposition testimony in their opposition. Appellants questioned him regarding detailed cost reports DAS generated and sent to its clients. Lawrence testified that every report has a different function, and that a company's costs can be broken down by department. When asked why a report did not reflect what is being charged for FUTA and SUTA, Lawrence stated that "it does. It's included in the fee." When asked where this is reflected, Lawrence responded "Um, I'll have to look at the numbers to break it out." Lawrence was specifically asked "does this [detailed cost report] show an itemization of the actual federal and state unemployment taxes owed by the PEO client and then equally paid by Delta on behalf of that client to the taxing

authorities?" Lawrence responded "It may be in another report." Lawrence's testimony indicates that it is unlikely a client could understand from a DAS report the breakdown of fees from taxes, and that to obtain this information, a client would have to specifically request it from DAS.

Both Lawrence's summary judgment motion and Lawrence and DAS's summary judgment motion were argued before the district court on May 2, 2018. The district court rendered judgment on both in one judgment dated May 2, 2018. The district court granted Lawrence's first summary judgment motion and dismissed all claims against Lawrence. The court found that appellants had not provided any proof to suggest that Lawrence is individually liable for his actions as a member of DAS. It also granted the second summary judgment motion as to Lawrence, but denied that motion as to DAS. Appellants have only appealed the judgment on the first summary judgment motion and designated the record to include the pleadings related to that motion but not the second summary judgment motion.

On September 11, 2018, appellee filed a motion to dismiss this appeal as moot, asserting that appellants' failure to also appeal the trial court's granting of the second motion for summary judgment (the March 20, 2018 motion) and designation of a limited record excluding evidence related to the second motion results in an abandonment of the issue. More specifically, appellee argues that because the trial court dismissed appellants' claims against him based on two different summary judgment motions and appellants' did not appeal the granting of both motions, the judgment on the second motion is a final judgment between the parties, and thus this appeal is moot. In opposition to the motion to dismiss, appellants assert that the ruling on the second summary judgment motion (which is in the same judgment as the ruling on the first summary judgment motion) is an absolute nullity because Lawrence had already been dismissed when the trial court rendered that judgment.

18-CA-442                                    5

## ASSIGNMENTS OF ERROR

On appeal, appellants assert that (1) the trial court erred in finding there was no evidence submitted in the memorandum in opposition to the motion for summary judgment to support a misrepresentation claim; and (2) the trial court erred in granting summary judgment on a misrepresentation claim that involves the intentional acts and omissions of the movant.

## MOTION TO DISMISS

We first address appellee's motion to dismiss. We deny this motion for the following reasons. Although the one May 2, 2018 judgment grants the first motion for summary judgment and the second motion for summary judgment as to Lawrence, the judgment expressly only dismisses all claims against Lawrence after the language granting the first summary judgment. There is no additional decretal language, *i.e.*, an express dismissal of Lawrence, with regard to the second summary judgment motion. Notably, when ruling on the second motion in open court, the district court recognized that although both Lawrence and DAS had filed the second summary judgment motion, Lawrence had already been dismissed by the granting of the first motion. Thus, appellants properly appealed the granting of the first summary judgment motion.

In addition, because appellants' claim against Lawrence was expressly dismissed pursuant to granting of the first summary judgment motion, a ruling on the second summary judgment as to Lawrence was unnecessary. According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin., 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. Id. Thus, we find the judgment on the second motion for summary judgment as to Lawrence

was moot. Therefore, appellants' failure to appeal that judgment does not affect their appeal of the granting of the first motion for summary judgment. Accordingly, we deny appellee's motion to dismiss.

## STANDARD OF REVIEW

Appellate courts review summary judgments *de novo,* while considering the record and all reasonable inferences drawn from the record in the light most favorable to the non-movant. G.A. Lotz Co. v. Alack, 13-674 (La. App. 5 Cir. 4/9/14), 140 So.3d 94, 98. The Court must consider whether summary judgment is appropriate under the circumstances of the case and whether there is a genuine or triable issue on which reasonable minds could disagree. Id.

## LAW AND ANALYSIS

La. C.C.P. art. 966 provides that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." The movant bears the burden of proof. Bourgeois v. Allstate Ins. Co., 15-451 (La. App. 5 Cir. 12/23/15), 182 So.3d 1177. If, however, the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, the movant must establish that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id.

A "material fact" is one which, the existence or nonexistence of, may be essential to a plaintiff's cause of action under the applicable theory of recovery. When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary

judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B). Bourgeois, 182 So.3d at 1181-82. Although summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, "summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent." Bourgeois, 182 So.3d at 1180.

Lawrence asserts that he is not liable to appellants because he is shielded from liability under La. R.S. 12:1320. This statute states as follows:

A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

Appellants assert that Lawrence is liable under the fraud exception in La. R.S. 12:1320(D). They allege Lawrence misrepresented or suppressed material facts with the intention of obtaining an unjust advantage over appellants and caused them monetary loss by failing to inform them that they continued to charge FUTA and SUTA taxes after the thresholds had been met, and continued to list these FUTA and SUTA taxes on invoices despite that the funds were not paid to these taxing

authorities, but were instead retained by DAS. Lawrence asserts that appellants have failed to present any evidence Lawrence committed fraud. As fraud is not defined in La. R.S. 12:1320, the provisions on fraud in the Louisiana Civil Code govern. La. C.C. art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Ogea v. Merritt, 13-1085 (La. 12/10/13), 130 So.3d 888, 897-98. A party may recover damages when he has suffered a loss due to intentional fraudulent misrepresentation. Shields v. Par. of Jefferson, 13-481 (La. App. 5 Cir. 12/27/13), 131 So.3d 1048, 1052. The two elements necessary to establish fraud are an intent to defraud or gain an unfair advantage, and a resulting loss or damage. Mooers v. Sosa, 01-286 (La. App. 5 Cir. 9/25/01), 798 So.2d 200, 207. Pursuant to La. C.C. art. 1954, fraud does not vitiate consent when the party against whom a fraud is directed could have ascertained the truth without difficulty, inconvenience or special skill. Autin v. Autin, 617 So.2d 229, 233 (La. App. 5th Cir. 1993), writ denied, 620 So.2d 846 (La. 1993). Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.

Considering the following facts together and summary judgment law on fraud determinations, we find that genuine issues of material fact exist regarding appellants' intentional misrepresentation claim against Lawrence, namely whether Lawrence intended to defraud appellants. First, the various service agreements represent the administrative fee as a fee on total wages. The agreements do not refer to any other additional administrative fees, or the conversion of any tax payments or workers compensation premiums to fees.

In addition to other claims of fraud arguably supported by deposition testimony, in her March 8, 2018 1442 deposition of Island Time [Exhibit 1], Terri

Savoie testified that David Lawrence "misrepresented the whole thing. I think he conned me." (Record, p. 394, ll. 23-24). She went on to state:

> "Because we sat several times, several times, and talked about the rate of workmen's comp and the rate of his administrative fee, and how it equaled my workers' comp and my rate at another payroll company, and how **it was a wash**, and how he gave me **more service for the same price**. And that is why I moved.
> "That was continual. **That was a continual, continual representation** all through my relationship with David. That was all we spoke of." [Emphasis added.] (Record, p. 395, ll. 1-12)

This or similar testimony, if believed by the trier of fact, may provide sufficient evidentiary support for misrepresentation or for the fraud claim. Regardless, for the purposes of summary judgment, it creates a genuine issue of material fact.

Second, Lawrence was involved in the negotiation of this agreement with appellants and signed the agreement on behalf of DAS. The deposition testimony suggests that despite Lawrence's contract negotiations and meetings with various members of appellants' management team regarding DAS's administrative fees, Lawrence never disclosed to any of the appellant clients involved in this matter that the FUTA and SUTA taxes converted to an administrative fee at any point.

Third, members of appellants' management testified that several times they requested clarification specifically regarding the continued charges of FUTA and SUTA taxes after the cutoffs had been satisfied. This raises a genuine issue of material fact as to whether Lawrence evaded the issue in order to defraud appellants of the excess FUTA and SUTA taxes and workers' compensation premiums.

Fourth, in a January 29, 2015 email, Lawrence represented to one appellant, Island Time, that DAS was reducing its rate to a 1% administrative fee of the gross profit as of February 1, 2015, without any mention of other administrative fees being collected from excess FUTA and SUTA taxes and workers' compensation premiums. Here, Lawrence represented that DAS was reducing appellants' administrative fee but still did not disclose or discuss with appellants the truth

regarding excess FUTA and SUTA taxes. This document raises a genuine issue of material fact as to whether Lawrence intended to defraud appellants of excess FUTA and SUTA taxes and workers' compensation premiums. If reasonable persons could disagree after considering the evidence, a genuine issue exists. Shields v. Par. of Jefferson, 13-481 (La. App. 5 Cir. 12/27/13), 131 So.3d 1048, 1052. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Id.

In light of the foregoing, although the Fee Schedule states that there is no reduction of FUTA and SUTA taxes upon reaching cut-offs, we find a genuine issue of material fact exists at this time as to appellants' fraud and/or intentional misrepresentation claim. Accordingly, we reverse the district court's granting of Lawrence's motion for summary judgment and the dismissal of all of appellants' claims against him and remand for further proceedings.

**REVERSED AND REMANDED**

NO. 18-CA-442                      B & P RESTAURANT GROUP, LLC, ET AL

FIFTH CIRCUIT

                                   VERSUS

COURT OF APPEAL

                                   DELTA ADMINISTRATIVE

STATE OF LOUISIANA                 SERVICES, LLC, ET AL


**WICKER, J. CONCURS WITH REASONS**

      While I agree with the outcome in this case, respectfully I write separately to emphasize that we find only that there are genuine issues of material fact which preclude summary judgment. It is not our intention to opine in any manner with regard to the merits of the case.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 4, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

# 18-CA-442

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
RICHARD B. EHRET (APPELLANT)          MICHAEL S. BLACKWELL (APPELLEE)

## MAILED

MICHAEL E. PONDER (OTHER)
ATTORNEY AT LAW
1342 SOUTH COLUMBINE STREET
BATON ROUGE, LA 70808

ROSS A. LEDET (APPELLANT)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 1540
NEW ORLEANS, LA 70130

NORMAN A. MOTT, III (APPELLEE)
ATTORNEY AT LAW
650 POYDRAS STREET
SUITE 2600
NEW ORLEANS, LA 70130