UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60877
Summary Calendar

_____

BENJAMIN J. TAYLOR,

Petitioner,

versus

SEA-LAND SERVICES, INC.; CRAWFORD & CO.;
and DIRECTOR, OFFICE OF WORKERS COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR

Respondents.

_____

Appeal from the Benefits Review Board
(95-0975)

_____

April 2, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

On December 21, 1994, an Administrative Law Judge (ALJ) with the Department of Labor

determined that under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.

§§ 901-50, Benjamin Taylor is entitled to temporary rather than permanent total disability benefits

based on an average weekly wage of $568.32. The Benefits Review Board affirmed this decision by

operation of law, and Taylor now appeals. We affirm.

Taylor complains on appeal that the ALJ's two critical findings were not supported by

substantial evidence. First, Taylor challenges the ALJ's determination that he is entitled to only

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

temporary total disability benefits for a severe, but not in and of itself permanently disabling, knee injury that he sustained while working for Sea-Land. The ALJ reached this conclusion after rejecting Taylor's claim that his rheumatoid arthritis, which first appeared after he injured his knee at work and has left him confined to a wheelchair, was in fact caused by this work-related knee injury. Invoking the "aggravation rule" on appeal, Taylor argues that, contrary to the ALJ's conclusion, the substantial evidence in the record shows that this work-related injury aggravated or triggered his rheumatoid arthritis and left him totally and permanently disabled. Second, Taylor contests the ALJ's determination of his average weekly wage.

We reject Taylor's first claim because the record as a whole reveals substantial evidence supporting the ALJ's finding that Taylor's rheumatoid arthritis is not compensable as a total permanent disability under the LHWCA because it was not caused by his work-related injury. Although Taylor's expert testified, by deposition, that the work-related injury caused his rheumatoid arthritis, the ALJ rejected this testimony as unsupported and "contrary to the current medical literature." Instead, the ALJ found Sea-Land's medical expert, Dr. Spindler, to be credible and accepted his testimony that "there is no evidence in the medical literature to support [a claim] that trauma is a[n] initiating cause of rheumatoid arthritis." Because we are not free to second-guess the ALJ's assessment of these competing experts and their testimony, *see, e.g., ITO Corp. v. Director, Office of Worker's Compensation Programs, U.S. Dep't of Labor*, 883 F.2d 422, 425 (5th Cir. 1989); *Calbeck v. Strachan Shipping Co.*, 306 F.2d 693, 695-96 (5th Cir. 1962); *Todd Shipyards Corp. v. Donovan*, 300 F.2d 741, 742 (5th Cir. 1962), we find that Dr. Spindler's testimony, which was credited by the ALJ, clearly furnished substantial evidence to support the ALJ's determination that Taylor's work-related injury did not function as the initiating cause his rheumatoid arthritis.

2

Dr. Spindler, however, also testified that "trauma . . . *might* [temporarily] aggravate an existing, underlying illness, such as rheumatoid arthritis," but that trauma to one joint would not produce the inflammation associated with rheumatoid arthritis in other joints. (emphasis added). Invoking the "aggravation rule," which provides that when an employment injury aggravates or exacerbates a pre-existing impairment and produces a disability greater than that which would have resulted from the employment injury alone, the entire disability is compensable, *see Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986) (en banc), Taylor argues that this testimony reveals a causal relationship between his knee injury and his rheumatoid arthritis within the meaning of the LHWCA. Accordingly, because the ALJ credited Dr. Spindler's testimony, Taylor contends that the substantial evidence in the record supports a finding that his work-related injury caused the condition that has left him completely and permanently disabled.

Although Taylor is correct in noting that his greater disability due to his arthritis would be compensable under the LHWCA if this condition was aggravated by his knee injury, there are at least two reasons why he is not entitled to the benefit of the aggravation rule under Dr. Spindler's testimony. First, Dr. Spindler simply testified that trauma *might* aggravate rheumatoid arthritis. He did not opine that Taylor's knee injury actually aggravated Taylor's rheumatoid arthritis. Consequently, there was no evidence before the ALJ that the trauma to Taylor's knee caused his rheumatoid arthritis. Second, Dr. Spindler's testimony established, at most, that trauma to a joint could temporarily aggravate the rheumatoid arthritis in that joint. In contrast, Taylor is claiming that his knee injury triggered or permanently exacerbated his rheumatoid arthritis, not only in his injured knee, but also in other joints. Thus, Dr. Spindler's testimony on the temporary and joint-specific effects of trauma cannot serve as the foundation for Taylor's permanent total disability claim.

3

Accordingly, the ALJ's conclusion that Taylor's rheumatoid arthritis was not compensable under the LHWCA was amply supported by the evidence.

We also reject Taylor's second claim because the record reveals substantial evidence supporting the ALJ's determination of Taylor's average weekly wage. Under 33 U.S.C. §§ 910(a)-(d), benefits are to be based on an average weekly wage that is determined: 1) by multiplying the injured worker's average daily wage by 260 or 300 (depending on whether he worked five or six days a week) and then dividing that number by 52 in cases where the injured worker has been employed "during substantially the whole of the year immediately preceding his injury;" or 2) by arriving at a sum that "reasonably represent[s] the annual earning capacity of the injured employee" and then dividing this sum by 52 when the employee has not been employed during substantially the whole of the year immediately preceding his injury. *Id.* In this case, the record reveals that Taylor had earned $29,552.80 while working between 199 and 212 days during the preceding year. Moreover, Taylor offers no explanation for why he should be considered as having worked "during substantially the whole year" given that he did not work close to 260 days. Accordingly, the ALJ concluded that Taylor's average weekly wage should not be determined according to a formula based on 260 days of work and instead arrived at an average weekly wage of $568.32 by dividing 52 into $29,552.80, Taylor's total earnings for the prior year and the only evidence regarding his annual earning capacity. We therefore find that this determination was supported by substantial evidence.

AFFIRMED.